**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:24-CV-00798 |
| | § | |
| SOUTHWEST KEY PROGRAMS, INC., | § | |
| | § | |
| Defendant. | § | Jury Trial Demanded |

## COMPLAINT

The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601, *et seq.* ("Fair Housing Act") and alleges as follows:

## PRELIMINARY STATEMENT

1.     Defendant Southwest Key Programs, Inc. ("Southwest Key") is a national nonprofit organization that provides housing and services to unaccompanied children who have entered the United States. From at least 2015 through at least 2023, multiple Southwest Key employees have subjected unaccompanied children in their care to repeated and unwelcome sexual abuse, harassment, and misconduct and a hostile housing environment, including severe sexual abuse and rape, solicitation of sex acts, solicitation of nude photos, entreaties for sexually inappropriate relationships, sexual comments and gestures, leering, and inappropriate touching. In some cases, Southwest Key employees threatened children to maintain their silence. In harassing these children, these Southwest Key employees exploited the children's vulnerabilities, language barriers, and distance from family and loved ones.

2. Despite knowledge of these severe and pervasive harms, Southwest Key failed to take appropriate action to protect the children in its care.

3. Southwest Key's actions constitute a pattern or practice of discrimination in housing because of sex in violation of the Fair Housing Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 42 U.S.C. § 3614(a).

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the actions and omissions giving rise to the United States' allegations occurred in the Western District of Texas, and the Defendant is incorporated and headquartered in the Western District of Texas, Austin Division.

## PARTIES

6. Plaintiff is the United States of America.

7. Defendant Southwest Key is a Texas nonprofit corporation. Its principal place of business and headquarters are located at 6002 Jain Lane, Austin, Texas 78721-3104.

## FACTUAL ALLEGATIONS

### I.   The Children

8. The children who are entrusted to Southwest Key's care are at the heart of this case. The aggrieved children range in age from as young as five years old to teenagers just shy of eighteen years old.

9. Under federal statute, an "unaccompanied alien child" (hereafter "unaccompanied child" or "child") is defined as a child under the age of 18 "who has no lawful immigration status in the United States," and for whom there is "no parent or legal guardian in the United States; or

. . . no parent or legal guardian in the United States [] available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

10.     Unaccompanied children who arrive at the southwest land border are predominantly from Guatemala, El Salvador, Honduras, or Mexico, among other countries of origin. Many of these children travel without their parents or guardians and endure dangerous conditions and traumatic treatment both in their home countries and during their journey to the United States.

11.     Upon arrival in the United States, or when otherwise encountered by immigration authorities within the United States, unaccompanied children are taken into federal custody and transferred by immigration authorities to the Office of Refugee Resettlement ("ORR") of the United States Department of Health and Human Services ("HHS"). ORR is charged with "coordinating and implementing the care and placement of" unaccompanied children. 6 U.S.C. § 279(b)(1)(A).

12.     Until an unaccompanied child is released to a suitable sponsor, reaches the age of 18, or departs or is removed from the United States, ORR must place each child "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

13.     ORR contracts with and provides grants to a network of private care providers, including Southwest Key, to provide shelter care for and services to unaccompanied children.

14.     ORR has issued regulations, a policy guide, and a manual of procedures that private care providers must follow to prevent, detect, and respond to sexual abuse and harassment of the children placed in their care.[1]

---

[1] Interim Final Rule, Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment Involving Unaccompanied Children, 79 Fed. Reg. 77768 (December 24, 2014),

15.     ORR defines "shelter care" as "a residential care provider facility in which all of the programmatic components are administered on-site in the least restrictive environment."[2]

## II.    __Southwest Key__

16.     Southwest Key receives federal grants from HHS in consideration for providing housing and associated care for unaccompanied children.

17.     Southwest Key is currently the largest private care provider of housing for unaccompanied children in the United States. Between fiscal years 2015 and 2023, Southwest Key received over three billion dollars in funding from HHS.

18.     As a recipient of federal funds, Southwest Key is responsible for ensuring it will operate its shelter care in a non-discriminatory manner, and it made express contractual assurances it would comply with all federal statutes relating to nondiscrimination, including the Fair Housing Act.

### A.  Shelters

19.     Southwest Key currently operates a total of 29 shelters that can accommodate a total of 6,350 unaccompanied children.[3] These shelters are located across three states, Texas (17

---

*codified at* 45 C.F.R. Part 411; ORR Program Policy Guide ("ORR Policy Guide"), Section 4: Preventing, Detecting and Responding to Sexual Abuse and Harassment (June 7, 2021), *available at* https://perma.cc/ALW7-E2B8; The Unaccompanied Children Program Manual of Procedures (January 12, 2024), *available at* https://www.acf.hhs.gov/e-reading-room#frequently.

[2] ORR Policy Guide at Guide to Terms, *available at* https://perma.cc/DJ4K-TS4L. Shelter care is distinct from and less restrictive than the more restrictive placements of "Staff Secure Care" or "Secure Care." *Id.* Even more restrictive Staff Secure Care is in "a more shelter, home-like setting" as compared to "secure detention" settings. *Id.; see also* 45 C.F.R. § 410.1001 (defining "shelter" as a "standard program," and defining "standard program" as "any program, agency, or organization that . . . provide[s] **residential** . . . care" and is "non-secure") (emphasis added).

[3] Within the relevant time period, Southwest Key also previously operated Casa Blanca, in San Antonio, which housed up to 44 children, and Casa Houston Mesa, in Houston, which housed up to 54 children.

shelters), Arizona (10 shelters), and California (2 shelters):

| Shelter Name | Capacity | City | State |
|---|---|---|---|
| Casa Franklin | 45 | El Paso | TX |
| Casa Sueño | 58 | Weslaco | TX |
| Casa La Esperanza | 75 | Brownsville | TX |
| Casita Del Valle | 75 | San Elizario | TX |
| Casa Oasis | 89 | McAllen | TX |
| Casa Canutillo | 90 | Canutillo | TX |
| Casa Houston Reliant | 90 | Houston | TX |
| Casa Rio Grande | 160 | San Benito | TX |
| Casa Montezuma | 191 | Channelview | TX |
| Casa Nueva Esperanza | 200 | Brownsville | TX |
| Casa Antigua | 201 | San Benito | TX |
| Casa Sunzal | 222 | Houston | TX |
| Casa Quetzal | 236 | Houston | TX |
| Casa El Presidente | 413 | Brownsville | TX |
| Casa Trail House | 512 | El Paso | TX |
| Casa Norma Linda | 800 | Los Fresnos | TX |
| Casa Padre | 1200 | Brownsville | TX |
| La Promesa | 20 | Avondale | AZ |
| LTFC Nueva Amistad | 20 | Avondale | AZ |
| Casa Glendale | 68 | Glendale | AZ |
| Casa Lighthouse | 74 | Phoenix | AZ |
| Casa Las Palmas | 120 | Mesa | AZ |
| Casa Campbell | 128 | Phoenix | AZ |
| Casa Amanecer | 139 | Youngstown | AZ |
| Casa Estrella Del Norte | 300 | Tucson | AZ |
| Casa Kokopelli | 304 | Mesa | AZ |
| Casa Fortaleza | 420 | Phoenix | AZ |
| Casa Pleasant Hill | 26 | Pleasant Hill | CA |
| Casa San Diego | 74 | El Cajon | CA |

20.     Southwest Key shelters are called "Casas," the Spanish word for "home" or

"house."

21.     As Southwest Key has stated, "While residing in a Southwest Key dwelling, the children have no place else to live."[4]

22.     Southwest Key describes its mission as "providing residential, educational, health, and other humanitarian services to unaccompanied children in a nurturing environment."[5]

23.     Southwest Key Casas are occupied, and are intended for occupancy, as residences by unaccompanied children. Casas have recreation rooms, study halls, a cafeteria, and a computer lab.

24.     Southwest Key Casas are homelike settings in which children keep bedrooms unlocked, personalize and decorate their rooms, eat meals together, do homework, choose their own clothes, have access to outside play, go on educational and recreational field trips, and may receive mail, visitors, and phone calls. A typical day for children in a Southwest Key Casa includes breakfast, school, recreation, lunch, dinner, homework, snacks, and bedtime.

25.     Southwest Key's website states, "Our shelters look and feel like a dormitory setting. There are two to four twin size beds in each room and common areas to eat, play, read or relax. We provide programs to ensure children thrive while in our care."[6]

---

[4] Am. Compl. at 8, *Southwest Key Programs, Inc. v. City of Escondido*, No. 3:15-cv-01115 (S.D. Cal. Nov. 3, 2016).

[5] *Id.*

[6] Southwest Key Programs, Shelter Care FAQ, *available at* https://perma.cc/S2SC-3R8N.



Southwest Key image of shelter care bedroom. *Id.*

26.     Southwest Key employees provide food, medical care, mental health services, transportation, recreational activities, and educational services to the children living at the shelters.

27.     Southwest Key shelters are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

28.     Indeed, in two separate federal lawsuits, Southwest Key has asserted its right to operate housing for unaccompanied children by taking the position that its shelters were "dwellings" under the Fair Housing Act.[7] In one of those lawsuits, Southwest Key averred in a

---

[7] *See* Pl.'s Opp. Br. at 18, *Southwest Key Programs, Inc. v. City of Escondido*, No. 3:15-cv-01115, (S.D. Cal. filed May 18, 2015); Compl. at 3, *Southwest Key Programs, Inc. v. City of Houston*, No. 4:18-cv-03289 (S.D. Tex. filed Sept. 14, 2018).

declaration that it "operates **housing** for unaccompanied immigrant minors" and "provides this **housing** at over twenty facilities in California, Arizona, and Texas."[8]

29.     Southwest Key has repeatedly certified to the United States Internal Revenue Service that it provides children with "a safe, home-like, and nurturing environment."[9]

**B.  Staff**

30.     Youth Care Workers comprise a large portion of Southwest Key's shelter staff. According to Southwest Key's job descriptions for Youth Care Workers, they are "responsible for providing direct care supervision for youth residing in Southwest Key [shelters]," and attend to the "basic needs" of children, including supervising children during day and evening shifts, escorting children to daily activities and meals, planning and facilitating recreation, and assisting with transportation of children.

31.     Southwest Key is required to provide its employees and resident children with trainings and education on identifying, reporting, and preventing sexual abuse and harassment.

32.     Pursuant to 45 C.F.R. § 410.1303(g) and ORR Policy Guide Section 4.3.5, Southwest Key employees are required to report knowledge or information about any sexual harassment, sexual abuse, inappropriate sexual behavior, or staff code of conduct violations to their superiors and the proper investigating authorities.

---

[8] Saldana Decl. at 1-2, *Southwest Key Programs, Inc. v. City of Houston*, No. 4:18-cv-03289 (S.D. Tex. filed Sept. 14, 2018) (emphasis added).

[9] *See, e.g.*, Southwest Key Programs, Inc., Return of Organization Exempt from Income Tax (Form 990, Tax Year 2018), at 13 (July 12, 2019), *available at* https://perma.cc/Z3SW-BMHU; Southwest Key Programs, Inc., Return of Organization Exempt from Income Tax (Form 990, Tax Year 2019), at 13 (July 10, 2020), *available at* https://perma.cc/L3C9-YQ49; Southwest Key Programs, Inc., Return of Organization Exempt from Income Tax (Form 990, Tax Year 2021), at 13 (Mar. 15, 2023), *available at* https://perma.cc/KA6P-SWMG.

33.     Southwest Key is required to supervise and monitor children for their safety, including through video monitoring. For private areas such as bedrooms and bathrooms where cameras are not located, Southwest Key uses a spotter system requiring two employees to work together to observe each other in conducting checks on children.

III.     **Sexual Abuse and Harassment at Southwest Key Casas**

34.      Southwest Key has engaged in a pattern or practice of severe or pervasive sexual harassment of children in its care.

35.     From 2015 continuing through at least the end of 2023, Southwest Key received complaints concerning the sexual abuse and harassment of children at the majority of its Casas.

36.     Southwest Key has failed to follow its own policies for preventing, detecting, and responding to sexual abuse and harassment and has likewise failed to consistently follow ORR policies to prevent, detect, and respond to sexual abuse and harassment in its shelters, despite ORR having issued multiple corrective actions to Southwest Key.

37.     Through these and other actions described below, Southwest Key has failed to take reasonable, appropriate, and sufficient action to prevent, detect, and respond to sexual abuse and harassment of the children entrusted to its care.

**A. Documented Nature and Scope of Sexual Harassment**

38.     For each instance of sexual abuse, harassment, or misconduct involving an unaccompanied child, housing providers must create Reports,[10] submit the Reports to ORR, and update the Reports as new information becomes available.

---

[10] Child Level Events, formerly known as Sexual Abuse/Significant Incident Reports ("SA/SIRs"), are the official instruments ORR requires all unaccompanied children housing providers, like Southwest Key, to use to report sexual abuse, harassment, and misconduct ("Reports").

39.     Since at least 2015, multiple Southwest Key employees—including supervisory and non-supervisory employees—have subjected children living at Southwest Key shelter care homes to severe, pervasive, and unwelcome sexual abuse and harassment, including as documented by Southwest Key Reports. This conduct includes, but is not limited to:

    a.  Employees perpetrating sexual assault and rape of children, including sexual contact in the manner of genital to genital and oral to genital contact;

    b.  Employees intentionally touching, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, and buttocks of children;

    c.  Employees soliciting, requesting, coercing, and inducing the above-described acts with children;

    d.  Employees soliciting, requesting, coercing, and inducing nude or sexually explicit photos of children;

    e.  Employees making repeated unwelcome and unwanted entreaties for sexually inappropriate relationships with children;

    f.  Employees making sexual comments and gestures to children; and

    g.  Employees engaging in voyeurism and leering at children with the intent to abuse, arouse, or gratify sexual desire.

**B.  Reported Accounts of Sexual Abuse and Sexual Harassment**

40.     Southwest Key's own documents report numerous examples of sexual abuse and harassment of children by employees.

41.     For example, one Southwest Key Report describes a Southwest Key Youth Care Worker who in 2022 repeatedly sexually abused a five-year-old girl, an eight-year-old girl, and an eleven-year-old girl at Casa Franklin in El Paso, Texas. The eight-year-old girl disclosed that

the Youth Care Worker repeatedly entered their bedrooms in the middle of the night to touch their "private area," and he threatened to kill their families if they disclosed the abuse.

42.     Another Southwest Key Report describes a Southwest Key Shift Leader (a supervisory employee) who in 2019 repeatedly raped, abused, and threatened a teenage girl throughout her shelter stay at Casa Montezuma in Channelview, Texas. The child reported the abuse by passing a note to her teacher on a day when she knew the Shift Leader was out of the country on vacation. Her note stated that the Shift Leader was having sex with her at the shelter and threatening her to remain silent. She wrote "el puede hacer lo que se le plazea porque es chiflider el manda," translated to, "he can do whatever he pleases because he is a Shift Leader, he's the boss."[11] She reported she believed that Southwest Key employees were covering to protect the Shift Leader because, among other things, he would regularly switch assignments with other staff so that he could be alone with her. Staff also commented about the amount of time the Shift Leader spent with the child. The child further reported the Shift Leader had solicited nude photos of her and demanded videos of her touching herself, he made her perform oral sex on him, and he had threatened that if she reported the abuse she would be hospitalized. The child's accounts were partially corroborated by video footage of the Shift Leader entering her bedroom and her journal documenting abuse. In addition, employees observed the Shift Leader's failure to follow bedroom check policy and routinely entering the child's bedroom (as well as entering other children's bedroom) for periods of time without other employees present. Following her report, the child was transferred to a different shelter.

---

[11] All Spanish to English translations in this complaint are quoted directly from Southwest Key's Reports or related documents. Errors in Spanish or English are in Southwest Key's Report or related documents.

43.     Numerous Southwest Key Reports detail a Southwest Key Youth Care Worker who in 2020 absconded with a fifteen-year-old boy from Casa Kokopelli in Arizona. The Southwest Key Youth Care Worker took the boy to a hotel room for several days where the Youth Care Worker paid him for sex acts. The Youth Care Worker was indicted in Maricopa County Superior Court with multiple felony counts of sexual conduct with a minor and pleaded guilty in March 2022 to felony attempted sexual conduct with a minor.

44.     Additionally, Southwest Key documents detail a Youth Care Worker who sexually touched boys during transport in May 2022. First, the Youth Care Worker was tasked with providing transportation to a fifteen-year-old boy, departing from shelter care at Casa Oasis in McAllen, Texas. The boy reported to his mother that the Youth Care Worker touched the boy, tried kissing him, and told the boy to "sácame el pene y pélalo," translated to "take his dick out and rub it." Four days after that incident, another Report recounts that the same Youth Care Worker attempted to sexually touch a different teenage boy during transport from shelter care at Casa El Presidente in Brownsville, Texas to reunify the child with his guardian. During this latter transport, the Youth Care Worker followed the child into the bathroom and tried to exchange phone numbers to meet up afterwards. The Report states "there were similar incidents with other minors in the chaperone's care." Even though the Youth Care Worker admitted to inappropriately touching a child, making inappropriate comments, and violating Southwest Key policies in connection with these allegations, Southwest Key's internal investigation found the incidents were "unsubstantiated." A federal grand jury returned a three-count criminal indictment of the Southwest Key employee for sexual contact with children. The indictment stems from the incidents described in this paragraph and a third incident, in April 2022, in which the same

Youth Care Worker knowingly engaged in sexual contact with another child in Southwest Key's care.

45.     Southwest Key Reports, documents, and video detail a Southwest Key Youth Care Worker who in 2019 and 2020 engaged in a long-term inappropriate relationship with a teenager in shelter care at Casa Padre in Brownsville, Texas. Multiple Southwest Key employees knew of the relationship—including one Southwest Key employee who witnessed the pair conversing in a known camera blind spot in a bedroom—but the Southwest Key employees did not report the inappropriate relationship. Video footage shows the Youth Care Worker kissing the teenager in the dormitories. The Youth Care Worker had helped other children run away from Southwest Key, and indeed, shortly after this inappropriate relationship was disclosed, it was discovered that the teenager involved had run away as well.

46.     Another Southwest Key Report and internal documents detail that, in July 2021, at Casa Estrella in Tucson, Arizona, a fifteen-year-old child reported a male Youth Care Worker entered his bedroom without knocking while the child was lying in bed and touched the child's buttocks. Security footage corroborates the child's account of the Youth Care Worker entering his bedroom. During a previous encounter, the same Youth Care Worker had touched the child's lower back. The child expressed to Southwest Key his discomfort with the Youth Care Worker's touching and described that the Youth Care Worker "kept going into my room like 6 times without knocking" and without another Southwest Key employee present, in violation of Southwest Key's policies on spotters and staff ratios.

47.     At Casa Padre in Brownsville, Texas, in October 2021, two seventeen-year-old boys reported, on separate occasions, a male Youth Care Worker commented on their appearance and made them feel uncomfortable with comments of a sexual nature. Each boy said the Youth

Care Worker complimented his physical appearance. The Youth Care Worker told one boy that his mustache looked good on him, requested the child meet him in the restroom, and mentioned his sexual preference for men. Other children witnessed the interaction and corroborated the boy's account. Video footage further supports the child's account. Southwest Key's internal review of the allegations found "based on a preponderance of evidence there is sufficient evidence to indicate that [Youth Care Worker] sexually harassed [the two boys]."

48.     In March 2022, a twelve-year-old girl at Casa Franklin in El Paso, Texas, reported a teacher's assistant placed his hand on her lower back and buttocks. The child reported she believed the teacher's assistant did this intentionally, that he always requested that she stand in the back of line-ups when walking in the shelter, and that he only removed his hand because another teacher was approaching. The incident occurred in a stairway when the children were lining up to go down the stairs to the basement. The girl cried when she reported the incident. She said she was in shock, did not feel safe around the teacher's assistant, and that he made her feel uncomfortable. As of October 2022, the teacher's assistant remained employed at Southwest Key and still worked directly with children.

49.     In 2019, at Casa Kokopelli in Mesa, Arizona, a teenage girl reported that she felt uncomfortable with her clinician who asked her questions about her sexual experiences, asked if she wanted a hug, and looked over her body. When the girl told the clinician that she was sad about missing her mother, the clinician turned the conversation to sex and conducted graphic and detailed questioning, including: how many times she has had sex, whether she enjoyed sex, "if she had been on top or on bottom and [whether] it had been vaginal or oral sex," and "who finished first." The girl reported that the clinician asked her to look into his eyes when she answered his questions of a sexual nature and that he kept looking her body up and down during

the session. The clinician admitted to discussing the sexual encounter with the girl, even though he did not document the discussion in his case notes. During its internal investigation, Southwest Key learned this was not the only time the clinician had engaged in this type of conduct. Another fifteen-year-old girl also reported that the same clinician once told her he "can be more than your clinician if you would allow me to." The Southwest Key internal review and investigation report noted that, among other procedural failures, the Clinician "failed to follow clinical department procedures."

50.     In February 2022, at Casa Norma Linda in Los Fresnos, Texas, a Southwest Key employee reported a Youth Care Worker was involved in an inappropriate relationship with a sixteen-year-old girl. The girl told a peer that she was in a relationship with a Youth Care Worker and, when the girl was discharged, she left a love letter and a bracelet for the Youth Care Worker. The girl's letter stated that she loved the Youth Care Worker, was happy to know that he feels the same way about her, and could not wait for him to "teach her all he says that he wants to teach her." Two other Southwest Key employees knew of the relationship and not only failed to report its existence but assisted the relationship by facilitating communication between the child and the Youth Care Worker.

51.     Another 2019 Southwest Key Report details how, at Casa Rio Grande in San Benito, Texas, a child reported a male Youth Care Worker told him he liked dating "transexuals, transgenero, personas gay," translated to "transexuals, transgender, gay individuals." The Youth Care Worker asked the child if he dressed as a woman and went to work at night; while asking this, the Youth Care Worker caressed his own groin. After the child complained, Southwest Key transferred the child to a shelter in another state. Southwest Key ultimately reinstated the Youth Care Worker at Casa Rio Grande.

52.     In 2019 at Casa Antigua in San Benito, Texas, a twelve-year-old girl reported a male Youth Care Worker commented on her attractiveness. The Youth Care Worker's comments and how he approached her made her uncomfortable. During the overnight shift, the child was filling up her water bottle and she felt someone behind her. When she turned, the Youth Care Worker was standing behind her and asked where she was from. She answered and the Youth Care Worker replied "Las Salvadoreñas son muy guapas. Usted tiena una tia igual de bonita que usted para no quedarme solo cuando usted se vaya" translated to "girls from El Salvador are pretty. Do you have an aunt as pretty as you so I won't be alone when you leave." Later, the Youth Care Worker watched her pass by and again commented on her appearance while wishing her a good night. Video footage corroborated the child's account, and the Youth Care Worker admitted to making the comment that "girls from El Salvador are pretty." Southwest Key's internal review confirmed this, too, and documented that "the victim reported [the] alleged perpetrator asked the victim what her ethnicity was before making [an] inappropriate comment to her."

53.     In 2023, at Casa Las Palmas in Mesa, Arizona, a child reported that a male Youth Care Worker made numerous sexually inappropriate comments to her, including "If I was your husband, I would give it to you hard, you are too virgin;" "What nice lips you have, what kind of things to do with those lips;" and "You have sucking lips. How are the women of Venezuela?" The child described being scared to report these incidents because she "does not want her case to take any longer." She reported feeling uncomfortable around the Youth Care Worker after his comments: "I could not even look at him because of what he told me . . . . I felt that his gaze was focused on me and that he was going to touch me." After her interactions with the Youth Care

Worker, eleven incidents were reported on the child for refusing to eat meals or follow redirection.

54.     In 2022, at a Southwest Key Casa in Texas, a sixteen-year-old boy was harassed repeatedly by a female Shift Leader (supervisor) during his stay. She touched the child while he was in a shower, and verbally harassed him, "constantly" telling him that she wanted him to stay in the shelter and "have children with her." Southwest Key's internal investigation found the Shift Leader violated a boundary memo when she rode alone with the child during transport. The Shift Leader was reinstated in February 2023 and continued employment with Southwest Key.

55.     At all relevant times, the Southwest Key employees referenced above were acting as agents of Southwest Key.

56.     The incidents described above are only some of over one hundred Reports of unlawful sexual abuse or harassment of children in Southwest Key's care since at least 2015. These instances are examples of Southwest Key's longstanding pattern or practice of illegal sexual abuse, harassment, and misconduct against children in Southwest Key's care. Southwest Key failed to consistently correct its practices and permitted the harassment to continue without adequate intervention.

**C. Additional Evidence Confirms a Pattern or Practice of Sexual Harassment**

57.     As described above, on numerous occasions Southwest Key employees failed to report knowledge or suspicion of sexual abuse or harassment of children, including when the abuse was observed by others or was ongoing.

58.     Such failure to report known or suspected instances of sexual abuse or harassment is a violation of Southwest Key policies.

59.     During the relevant time period, Southwest Key employees threatened some children who experienced sexual abuse or harassment and discouraged them from reporting their experiences to maintain their silence. For example:

   a.   A Southwest Key employee at Casa Franklin in El Paso, Texas, threatened an eight-year-old female child that if she reported his abuse to anyone, he would "kill her family."

   b.   A Southwest Key manager at Casa Montezuma in Channelview, Texas, threatened the female child he was harassing that if she reported the sexual abuse, she would be hospitalized.

   c.   A Southwest Key employee at Casa Nueva Esperanza in Brownsville, Texas, discouraged a child from pursuing a report of harassment by telling the child it would delay her reunification with her family or adversely affect her placement with a sponsor.

   d.   In 2022 at Casa Blanca, in San Antonio, Texas, a child, with visible physical marks resembling hickeys on her body and breasts, reported a sexual assault to a Southwest Key employee who instructed her to "cover up" the marks. That employee did not write a Report, seek a medical examination for the child, nor report the incident to ORR or law enforcement as required by policies. The child reported to a different trusted Southwest Key employee who notified a supervisor of the incident. The supervisor told her not to write a Report. The employee then tried to help the child report directly to ORR, but Southwest Key supervisors purported not to have the ORR hotline reporting number, in violation of ORR policies.

60.     The conduct of multiple Southwest Key employees and supervisors toward children who reported sexual abuse or harassment, including the examples described above, caused many children to fear that reporting harassing incidents would negatively affect their reunification with family, as documented in multiple Reports.

61.     Several of the incidents described above in Section III.B occurred when employees entered children's bedrooms unsupervised, against Southwest Key policies.

62.     On numerous occasions, Southwest Key employees have not complied, and continue not to comply, with the requirements for a "spotter system" when checking on children in areas where employees know security cameras are not permitted, such as in bedrooms. For example:

  a.  At Casa Franklin, in El Paso, Texas, individual employees sometimes enter children's bedrooms at night without a second employee as "spotter," which is against Southwest Key policies that require specific staff-to-child ratios for bedroom checks.

  b.  As described in paragraph 42, Southwest Key employees had observed the Shift Leader's failure to follow bedroom check policy and had seen him routinely enter children's bedrooms for periods of time without other employees present.

  c.  At Casa Canutillo, in Canutillo, Texas, employees, including supervisors, know that some bedrooms do not provide a clear line of sight for shelter employees to check on children from the doorway. In those instances, employees can and do fully enter the bedroom when doing bedroom checks and are out of the spotter's sight.

19

63.     In addition, Southwest Key has documented numerous examples of code of conduct or "boundary violations" between Southwest Key employees and children in violation of Southwest Key policies, including: exchanging contact information or social media information with children, either during or after children's shelter stays; gift giving; inappropriate comments; physical contact; over-attentiveness or favoritism toward a certain child when responsible for attending to a group of children; and unsanctioned communication with children. Some of this conduct, which Southwest Key has tolerated and permitted to continue even though it violates Southwest Key's policies, may send mixed signals to the children and increase the risk of future sexual abuse and harassment of the children in Southwest Key's care.

64.     Southwest Key increases the risk of sexual abuse and harassment of children who are not proficient in either English or Spanish by failing to provide language access services that adequately ensure children can disclose inappropriate conduct, in violation of ORR requirements.[12]

65.     As of 2021, at 20 of Southwest Key's then-thirty-one shelters, children spoke a range of languages other than English or Spanish, including languages specific to Central American countries, such as K'iche' or Mam. Southwest Key fails to consistently offer interpretation services for those children. For example:

      a.  Employees occasionally use Google Translate to communicate with children, though one Youth Care Worker noted that Google Translate does not translate certain Central American languages like K'iche' or Mam.

      b.  One employee at Casa Nueva Esperanza in Brownsville, Texas reported Guatemala has "difficult" languages and some of the children from Guatemala

---

[12] ORR Policy Guide, Section 3, *available at* https://perma.cc/72EW-MHEE.

do not understand Spanish. The employee explained that if a child speaking one of these languages needed to report sexual abuse, they could make a report to the Guatemalan consulate.

    c.    At multiple Casas, employees sometimes rely on what they refer to as "kid-to-kid" translation to communicate with children from Central American countries who speak languages other than English or Spanish. For example, one Report describes that an employee used a child to "scold" one of their peers in that peer's native language for engaging in sexually harassing behavior toward other children.

66.    The inability of some children to communicate in English or Spanish, and the lack of access to effective interpretation services, creates a barrier to reporting and communicating about sexual abuse and harassment.

**D.  Southwest Key's Liability**

67.    Southwest Key is vicariously liable for the violations committed by its employees. The incidents of harassment detailed above were all committed by Southwest Key employees in the course of their work at Southwest Key. The roles of these employees, including their responsibilities to meet with, interact with, and care for the children in Southwest Key's care, provided access to children and enabled the sexual abuse and harassment.

68.    Southwest Key is directly liable because it knew, should have known, or was deliberately indifferent to the fact that its employees and agents were sexually harassing children living in Southwest Key Casas. It failed to act promptly to correct and end the sexual abuse and harassment. It failed to consistently follow ORR's required policies to prevent, detect, and respond to sexual abuse and harassment in shelters.

69.     The above-described actions and conduct of Southwest Key employees caused the aggrieved children in its care to suffer physical harm, fear, anxiety, and emotional distress, and interfered with the children's ability to remain in safe and lawful housing, free of discrimination.

70.     On July 7, 2021, the United States notified Southwest Key that the Civil Rights Division of the Department of Justice had opened an investigation into whether Southwest Key had discriminated on the basis of sex by engaging in a pattern or practice of sexual harassment against children housed in its shelters. In the notice, the United States also requested information and documents from Southwest Key relevant to the investigation. On August 16, 2021, Southwest Key began producing some of the requested information.

71.     On December 5, 2023, the United States notified Southwest Key that the Assistant Attorney General for the Civil Rights Division had authorized the United States to file a complaint against Southwest Key for violations of the Fair Housing Act and invited Southwest Key to engage in pre-suit negotiations.

72.     Thereafter, the Parties entered into a series of agreements to toll the running of any applicable limitations period from and including December 5, 2023, through and including July 17, 2024.

## CAUSE OF ACTION

73.     By the actions and statements described above, Southwest Key has:

    a.   Made dwellings unavailable because of sex, in violation of 42 U.S.C.
        § 3604(a);

    b.   Discriminated in the terms, conditions, or privileges of the rental or sale of
        dwellings, or in the provision of services or facilities in connection therewith,
        because of sex, in violation of 42 U.S.C. § 3604(b);

    c.  Made statements with respect to the sale or rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

    d.  Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

74.    Under 42 U.S.C. § 3614(a), Southwest Key's conduct constitutes:

    a.  A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act; and

    b.  A denial to a group of persons of rights granted by the Fair Housing Act that raises an issue of general public importance.

75.    Southwest Key shelters are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

76.    Children residing in Southwest Key Casas have been injured by Southwest Key's discriminatory conduct because of their sex. These persons, among others, are "aggrieved persons" as defined in 42 U.S.C. § 3602(i) and have suffered damages as a result of Southwest Key's conduct.

77.    Southwest Key's conduct was intentional, willful, and taken in reckless disregard of the rights of others.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that the Court enter an Order that:

    a.  Declares that Southwest Key's discriminatory practices violate the Fair Housing Act;

    b.  Enjoins Southwest Key, its agents, employees, and successors, and all other persons in active concert or participation with them from:

        i.  Continuing to engage in any discriminatory housing practice in violation of the Fair Housing Act, including discrimination on the basis of sex, and engaging in sexual harassment;

        ii.  Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

        iii.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Southwest Key's past unlawful practices to the position they would have been in but for the discriminatory conduct; and

        iv.  Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of Southwest Key's unlawful practices;

    c.  Awards monetary damages to each person aggrieved by Southwest Key's discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B);

d.   Assesses civil penalties against Southwest Key to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

e.   Awards such additional relief as the interests of justice may require.

### DEMAND FOR JURY TRIAL

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: July 17, 2024

Respectfully Submitted,

MERRICK B. GARLAND
Attorney General

JAIME ESPARZA
United States Attorney
Western District of Texas

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

s/ Liane Noble
LIANE NOBLE
(TX Bar No. 24079059)
Assistant U.S. Attorney
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Phone: (512) 916-5858
Email: Liane.Noble@usdoj.gov

s/ Kinara A. Flagg
TIMOTHY J. MORAN
Deputy Chief
KINARA A. FLAGG (NY Bar No. 5092143)
JENNA A. RADEN (DC Bar No. 1724701)
KATIE LEGOMSKY (CA Bar No. 275571)
MARY ROSENBERG (IL Bar No. 6310037)
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, D.C. 20530
Phone: (202) 532-5016
Fax: (202) 514-1116
Email: Kinara.Flagg@usdoj.gov
Jenna.Raden@usdoj.gov
Kathryn.Legomsky@usdoj.gov
Mary.E.Rosenberg@usdoj.gov

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

s/ Jimmy A. Rodriguez
JIMMY A. RODRIGUEZ
(TX Bar No. 24037378)
Civil Division Deputy Chief
U.S. Attorney's Office
1000 Louisiana, Suite 2300
Houston, TX 77002
Phone: (713) 567-9000
Email: Jimmy.Rodriguez2@usdoj.gov

*Attorneys for Plaintiff United States of America*