**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | Case No: 1:24-CV-00798-DII |
| SOUTHWEST KEY PROGRAMS, INC., | § | |
| Defendant. | § | |

**DEFENDANT SOUTHWEST KEY PROGRAMS, INC.'S**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**WILLIAMS & CONNOLLY LLP**
Lisa S. Blatt (*pro hac vice*)
Christopher N. Manning (D.C. Bar No. 464049)
Tomas P. Castella (Tex. Bar No. 24095813)
680 Maine Avenue SW
Washington, DC 20024

*Attorneys for Defendant Southwest Key Programs Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

PROCEDURAL HISTORY................................................................................................ 8

LEGAL STANDARD ........................................................................................................ 9

ARGUMENT..................................................................................................................... 10

I.       THE FHA DOES NOT APPLY TO ORR SHELTER CARE FACILITIES. ........ 10

         A.       SHELTER CARE FACILITIES ARE NOT "DWELLINGS." ................... 10

         B.       THE ALLEGED CONDUCT DID NOT INVOLVE THE INITIAL
                  PROVISION OF HOUSING, OR A "SALE" OR "RENTAL." ................. 14

II.      CONGRESS INTENDED COMPREHENSIVE, STATUTORILY MANDATED
         FEDERAL REGULATIONS, NOT THE FHA, TO ADDRESS SEXUAL ABUSE
         IN ORR SHELTER CARE FACILITIES. .................................................... 18

CONCLUSION.................................................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*Cox v. City of Dallas*, 430 F.3d 734 (5th Cir. 2005) ..................................................................14, 15, 16, 17

*Emden v. Museum of Fine Arts*, 103 F.4th 308 (5th Cir. 2024).................................................................5, 9

*Garcia v. Condarco*, 114 F. Supp. 2d 1158 (D.N.M. 2000)................................................................... 11, 12

*Greater New Orleans Fair Housing Action Ctr. v. Kelly*, 364 F. Supp. 3d 635 (E.D. La. 2019) ....................16

*Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000).............................................................12

*Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir. 2004) ......................15

*Harmony Haus Westlake, LLC v. Parkstone Prop. Owners' Ass'n*, 851 F. App'x 461 (5th Cir. 2021)........11

*Hood v. Pope*, 627 F. App'x 295 (5th Cir. 2015) .................................................................................. 15, 17

*Hood v. Pope*, 2015 WL 225042 (S.D. Tex. Jan. 15, 2015) ................................................................. 14, 15

*Huskey v. Jones*, 45 F.4th 827 (5th Cir. 2022)....................................................................................................9

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019) .....................................9

*Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180 (4th Cir. 1999)....................................... 15, 16

*Jones v. Volunteers of Am. Greater N.Y.*, 2022 WL 768681 (S.D.N.Y. Mar. 14, 2022) ...............................17

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) ..............................................................................................20

*Ontiveros-Lerma v. Terrazas*, 2000 WL 36739442 (D.N.M. Sept. 8, 2000) ........................................... 11, 17

*Padgett v. Tex. Reg'l Asset Mgmt. LLC*, 2019 WL 13254312 (W.D. Tex. Mar. 6, 2019) ................... 16, 17

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ................................................19

*Rodriguez v. N.M. Children Youth & Families Dep't*, 2004 WL 7338065 (D.N.M. Feb. 4, 2004).............11

*Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008) ....................................................... 10, 11

*Southwest Key Programs, Inc. v. City of Escondido*, 2017 WL 1094001 (S.D. Cal. Mar. 23, 2017) ......... 12, 14

*Tex. Dep't of Hous. & Comm. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015)................18

*United States v. Space Hunters, Inc.*, 2001 WL 968993 (S.D.N.Y. Aug. 24, 2001) ......................................16

*Woods-Drake v. Lundy*, 667 F.2d 1198 (5th Cir. 1982) ................................................................................15

## STATUTES, RULES, AND REGULATIONS

6 U.S.C. § 279 ...............................................................................................................3, 4, 5, 12, 13

8 U.S.C. § 1232 ............................................................................................................................3

31 U.S.C. § 6305 .........................................................................................................................5

34 U.S.C. § 30302 ......................................................................................................................18

34 U.S.C. § 30307 ...................................................................................................................5, 18

42 U.S.C. § 1983 ........................................................................................................................16

Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq.* ......................................................... passim

   § 3602............................................................................................................................... 10, 17

   § 3604(a) .................................................................................................... 9, 10, 14, 15, 16

   § 3604(b)....................................................................................................... 9, 10, 14, 15, 16

   § 3604(c) ...................................................................................................... 9, 10, 14, 15, 16

   § 3617............................................................................................................................ 9, 10, 17

Federal Rule of Civil Procedure 12(b)(6) ................................................................................1, 9

45 C.F.R. § 75.371 .................................................................................................................8, 19

45 C.F.R. § 75.372 .................................................................................................................8, 19

45 C.F.R. § 410.1001 ..................................................................................................................4

45 C.F.R. § 410.1004 ..................................................................................................4, 12, 13, 17

45 C.F.R. § 410.1103 ...............................................................................................................3, 13

45 C.F.R. § 410.1105 .................................................................................................................13

45 C.F.R. § 410.1201 ..................................................................................................4, 12, 13, 17

45 C.F.R. § 410.1209 .................................................................................................................12

45 C.F.R. § 410.1303 ..................................................................................................................4

Off. of Refugee Resettlement, "Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment Involving Unaccompanied Children," 79 Fed. Reg. 77768 (Dec. 24, 2014) (codified at 45 C.F.R. pt. 411) ........................................................................................... passim

§ 411.10 ........................................................................................................................................... 5

§ 411.11 ........................................................................................................................................... 6

§ 411.12 ........................................................................................................................................... 5

§ 411.13 ........................................................................................................................................... 5

§ 411.21 ........................................................................................................................................... 6

§ 411.22 ........................................................................................................................................... 6

§ 411.31 ........................................................................................................................................... 6

§ 411.32 ........................................................................................................................................... 6

§ 411.33 ........................................................................................................................................... 6

§ 411.34 ........................................................................................................................................... 5

§ 411.51 ........................................................................................................................................... 6

§ 411.53 ........................................................................................................................................... 6

§ 411.61 ........................................................................................................................................... 6

§ 411.62 ........................................................................................................................................... 6

§ 411.63 ........................................................................................................................................... 6

§ 411.64 ........................................................................................................................................... 6

§ 411.71 ........................................................................................................................................... 7

§ 411.81 ....................................................................................................................................... 6, 7

§ 411.82 ........................................................................................................................................... 7

§ 411.101 ......................................................................................................................................... 7

§ 411.111 .................................................................................................................................... 7, 19

§ 411.114 .................................................................................................................................... 8, 19

# EXECUTIVE BRANCH MATERIALS

Fed. Bureau of Prisons, *About Our Facilities*, https://tinyurl.com/4k8pt9u2;.........................................13

Fed. Bureau of Prisons, *General Visiting Information*, https://tinyurl.com/mr3a3m4f...........................13

Fed. Bureau of Prisons, *Stay in Touch*, https://tinyurl.com/39t29hwt......................................................13

Off. of Refugee Resettlement, *About the Program* (Jan. 22, 2024),
    https://tinyurl.com/bdcvv5zn (attached as Ex. C) ...........................................................................3, 4

Off. of Refugee Resettlement, *Unaccompanied Children Bureau Fact Sheet* (Sept. 6, 2024),
    https://tinyurl.com/5br8bjd9 (attached as Ex. D).........................................................................4, 12

Off. of Refugee Resettlement, *Unaccompanied Children Bureau Policy Guide* (Aug. 1, 2024),
    https://tinyurl.com/pu2uxbnz (attached as Ex. E)................................................................... passim

U.S. Dep't of Health & Hum. Servs., *General Terms & Conditions*,
    https://tinyurl.com/4v4k92d8 (attached as Ex. F) ............................................................................8

# OTHER AUTHORITIES

*Residence*, *Black's Law Dictionary* (12th ed. 2024) ..............................................................................10

*Residence*, *Cambridge English Dictionary*, https://tinyurl.com/4y9mk5t8 .........................................10

*Residence*, *Merriam-Webster*, https://tinyurl.com/nhdvzf83 .................................................................10

*Residence*, *Random House Dictionary of English Language* (Jess Stein ed., 1966) .............................10

*Residence*, *Webster's Third New Int'l Dictionary* (Philip B. Gove ed., 1968) ...................................10

Southwest Key Programs, *Shelter Care FAQ*, https://perma.cc/S2SC-3R8N .........................................1

## INTRODUCTION

Defendant Southwest Key Programs, Inc. ("Southwest Key") respectfully moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Southwest Key is a nonprofit organization that, for over 20 years, has been an integral partner in the United States' response to the immigration crisis at the southern border. Southwest Key contracts with the Office of Refugee Resettlement ("ORR"), a component of the U.S. Department of Health and Human Services ("HHS"), to operate shelter care facilities for immigrant children who arrive without a parent or guardian and are taken into federal custody. Dkt. 1, ¶¶ 9, 11, 13. Each year, ORR places tens of thousands of children with Southwest Key temporarily until they can be released to a parent or other sponsor, usually for around 30 days or less. *See* Southwest Key Programs, *Shelter Care FAQ*, https://perma.cc/S2SC-3R8N, *quoted at* Dkt. 1 ¶ 25 n.6. Since 2015, ORR has placed roughly 100,000 children with Southwest Key. *See id.*

Southwest Key takes pride in its record of providing safe shelter care, and it vehemently denies the allegations that there is any "pattern or practice" of sexual abuse, harassment or misconduct at its facilities, or that it "failed to take reasonable, appropriate, and sufficient action to prevent, detect, and respond to sexual abuse and harassment of the children entrusted to its care." Dkt. 1, ¶¶ 34, 37, 56. To the contrary, Southwest Key complies with a comprehensive and robust set of federal laws and regulations, state licensing regulations, contracts, and policies precisely to prevent any such misconduct. *E.g.*, *id.* ¶ 14 & n.1. As the Department of Justice is aware, most of the alleged misconduct described in the Complaint was never substantiated. The fact that ORR continues today to contract with Southwest Key—its largest private provider of shelter care—confirms that there is no "pattern or practice" of misconduct or noncompliance.

This Motion does not require the Court to resolve these disputed allegations. Rather, it presents a straightforward legal question: whether the Fair Housing Act ("FHA") applies to shelter

care facilities operated by federal contractors for the temporary placement of unaccompanied children apprehended at the southern border and in the legal custody of ORR. The answer to that question is plainly no, for several reasons:

*First*, the FHA does not apply to ORR shelter care facilities, which are not "dwelling[s]" covered by the FHA. A "dwelling" means a residence where a person chooses to live, from which they are free to leave, and to which they intend to return. But, neither Southwest Key nor the unaccompanied children control child placements. Rather, ORR places children, and the children are not free to leave. Indeed, they remain in ORR's legal custody throughout their temporary placement. In addition, the Complaint's single cause of action is based on sections of the FHA that address discrimination in the initial "sale" or "rental" of a dwelling. But the allegations do not involve the initial "sale" or "rental" of a dwelling.

*Second*, Congress and ORR created a comprehensive set of *different* laws and regulations specifically intended to protect unaccompanied children from abuse in shelter care facilities. ORR's contracts with Southwest Key list these "Pertinent Federal Laws and Regulations for the UC Program"—a list that notably does *not* include the FHA. And, if a shelter care provider fails to comply, ORR is empowered to act. The Court need not force a square peg into a round hole, and significantly interfere with ORR's administration of the unaccompanied child program, by applying the FHA to a matter that Congress specifically directed HHS and ORR to address elsewhere.

To be clear, nothing in this Motion diminishes the seriousness with which Southwest Key takes allegations of sexual abuse or misconduct. But the FHA is not the vehicle to address them, and it would create a troubling precedent to extend the FHA dramatically beyond its intended scope here.

## BACKGROUND

Southwest Key is a national nonprofit organization that contracts with ORR to provide interim "shelter care" to unaccompanied children apprehended at the southern border and "taken into federal

custody." Dkt. 1 ¶¶ 1, 10, 11 13, 15. Unaccompanied children have no lawful immigration status in the United States, are under the age of 18, and have no parent or legal guardian in the United States or available to provide care and physical custody. *See id.* ¶ 9 (quoting 6 U.S.C. § 279(g)(2)). Southwest Key is ORR's largest private provider of shelter care for unaccompanied children; it currently operates 29 shelters in 3 states that can accommodate a total of 6,350 unaccompanied children, and during the 2015-2023 fiscal years, it received over $3 billion in funding from HHS. *See id.* ¶¶ 17, 19.

Extensive federal regulations govern interim shelter care for unaccompanied children. *See id.* ¶ 14. Congress has charged HHS with responsibility for "the care and custody of all unaccompanied … children." 8 U.S.C. § 1232(b)(1). ORR, in turn, is charged with "coordinating and implementing the care and placement of unaccompanied … children who are in Federal custody." 6 U.S.C. § 279(b)(1)(A); *see also* Dkt. 1 ¶ 11. Each child must be placed in the "least restrictive setting that is in the best interest of the child … provided that such setting is consistent with the interest in ensuring the unaccompanied child's timely appearance before DHS or the immigration courts and protecting the child's well-being." 45 C.F.R. § 410.1103(a). *Accord* Dkt. 1 ¶ 12 (quoting 8 U.S.C. § 1232(c)(2)); 6 U.S.C. § 279(b)(2) (requiring ORR "to ensure that such [placement] determinations ensure that unaccompanied … children … are likely to appear for all hearings or proceedings in which they are involved").[1] ORR is also charged with, *inter alia*, "overseeing the infrastructure and personnel of facilities in which unaccompanied … children reside," and "conducting investigations and inspections of facilities and other entities in which unaccompanied … children reside." 6 U.S.C. § 279(b)(1)(C)-(E), (G), (L).

Placements in care provider facilities are temporary. According to ORR, "[a]s of September 6,

---

[1] "The majority of [unaccompanied children] are cared for through a network of state licensed ORR-funded care providers, most of which are located close to areas where immigration officials apprehend large numbers of children." Off. of Refugee Resettlement, *About the Program* (Jan. 22, 2024), https://tinyurl.com/bdcvv5zn (attached as Ex. C). As discussed *infra*, the Court may consider the content of government reports and websites in considering this Motion. *See* Legal Standard, *infra* p. 9.

2024, … the average length of time an unaccompanied child remained in ORR's care was 34 days." Off. of Refugee Resettlement, *Unaccompanied Children Bureau Fact Sheet* (Sept. 6, 2024), https://tinyurl.com/5br8bjd9 (attached as Ex. D). As ORR explains, this is because, "[a]s soon as children enter ORR care, they are put in contact with their parents, guardians, or relatives, if known, and the process of finding a suitable sponsor begins. Most sponsors are a parent or a close family relative living in the United States." *Id.*

Unaccompanied children cannot choose which care provider facility to be placed in, and once placed, they have no say as to when they can leave. While in a care provider facility, an unaccompanied child remains "in the legal custody of ORR and may only be transferred or released by ORR" until discharged "to an ORR-vetted and approved sponsor." 45 C.F.R. § 410.1001 ("Placement" and "Release"); *accord id.* § 410.1004. ORR "shall not release such children upon their own recognizance" and may only release them to a qualifying relative or guardian if it first determines that "the detention of the unaccompanied child is not required either to secure the child's timely appearance before DHS or the immigration court, or to ensure the child's safety." *See* 6 U.S.C. § 279(b)(2)(B); 45 C.F.R. § 410.1201(a). Care providers must maintain "[c]ontrolled entry and exit from the premises to ensure unaccompanied children remain within the facility perimeter and to prevent access by the public without proper authorization." Off. of Refugee Resettlement, *Unaccompanied Children Bureau Policy Guide* ("Policy Guide") § 3.3.4 (Aug. 1, 2024), https://tinyurl.com/pu2uxbnz (attached as Ex. E). ORR conducts "investigations," "inspections," and "regular follow-up visits to such facilities … to assess the continued suitability" of placements, and it requires reporting of any significant incident involving a child. 6 U.S.C. § 279(b)(1)(L); *accord* 45 C.F.R. § 410.1303(a)-(b), (g).

Indeed, ORR maintains strict control over an unaccompanied child's care. Care providers must "operate under cooperative agreements," Ex. C; *accord* 45 C.F.R. § 410.1303(b), a special contract used when "substantial involvement is expected between the executive agency and the … recipient

when carrying out the activity contemplated in the agreement," 31 U.S.C. § 6305(2). Pursuant to these agreements, ORR carefully and closely supervises facilities' operations, including by "overseeing the infrastructure and personnel of facilities in which unaccompanied children reside." 6 U.S.C. § 279(b)(1)(G), and requiring compliance with a comprehensive set of federal laws and regulations intended to prevent, detect, and respond to sexual abuse and other misconduct. These laws and regulations, which are listed in Southwest Key's agreements,[2] include, *inter alia*, the Violence Against Women Reauthorization Act of 2013, in which Congress directed HHS to "publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of rape and sexual assault in facilities that maintain custody of unaccompanied … children" that would apply to HHS "and to facilities operated under contract with the Department." 34 U.S.C. § 30307(d)(1), (2). Congress further directed that these standards be based on federal prison regulations. *Id.* § 30307(d)(4).

The resulting regulations, titled "Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment Involving Unaccompanied Children," 45 C.F.R. pt. 411, "apply to all ORR care provider facilities," but not "[t]raditional foster care homes." *Id.* § 411.10(a). ORR must incorporate the regulations into its governing cooperative agreements. *Id.* § 411.12. As just some examples, the regulations require care providers to:

- Maintain "adequate levels of staffing," "conduct frequent unannounced rounds," specially train medical and mental health care staff, and, in some cases, use "video monitoring," "to identify and deter sexual abuse and sexual harassment," *id.* §§ 411.13(a), (c), 411.34;

- Educate all child-facing employees and volunteers on: (1) "the care provider facility's zero tolerance policies for all forms of sexual abuse and sexual harassment," (2) a child's right "to be free from sexual abuse and sexual harassment," (3) reporting procedures, and (4) "all

---

[2] Southwest Key's contracts with ORR are attached as Exhibit A and are identical in all material respects. Because they are referenced in the Complaint (¶¶ 13, 18), they are properly considered for purposes of this Motion. *See Emden v. Museum of Fine Arts*, 103 F.4th 308, 313 n.2 (5th Cir. 2024).

existing resources for [children] both inside and outside the care provider facility that provide treatment and counseling for trauma and legal advocacy for victims," *id.* §§ 411.31-411.32;

- "[T]ake immediate action to protect" children whom the care provider reasonably believes may be subject to sexual abuse, *id.* § 411.62;

- Notify children of their "right to be free from sexual abuse and sexual harassment as well as the[ir] right to be free from retaliation for reporting such incidents," explain "the methods for reporting sexual abuse and sexual harassment," and tell children about the treatment and counseling available to them, *id.* § 411.33(a); and

- Give children "multiple ways to report [allegations of sexual abuse] to the care provider," ORR, and consular officials, *id.* § 411.51.

The regulations also create extensive investigative and reporting requirements for allegations of sexual abuse or harassment. Again, as just some examples, care providers must:

- "[E]nsure that each allegation of sexual abuse and sexual harassment, including a third-party or anonymous allegation, is immediately referred to all appropriate investigating authorities, including Child Protective Services, the State or local licensing agency, and law enforcement" and notify and keep ORR informed of ongoing investigations, *id.* §§ 411.22(a), 411.61, 411.63;

- Provide access to "a victim advocate from a rape crisis center" or "a licensed clinician on staff to provide crisis intervention and trauma services," *id.* §§ 411.21, 411.53;

- Preserve evidence that could support the minor's allegation, *id.* § 411.64(a); and

- Employ at least one person to oversee compliance with the regulations, *id.* § 411.11(d).

If an allegation is substantiated, a care provider must "take disciplinary action up to and including termination," with termination being the "presumptive disciplinary sanction for staff who engaged in sexual abuse or sexual harassment." *Id.* § 411.81(a)-(b). Moreover, a care provider must report all terminations for violations of sexual abuse or harassment policies, or resignations of staff

6

who would have been terminated, to law enforcement agencies and State licensing bodies. *Id.* § 411.81(c). Any staff member with a substantiated allegation of sexual abuse or sexual harassment is barred for life from working at any ORR care provider facility. *Id.* § 411.81(d). The care provider must also "take appropriate remedial measures" and consider whether to prohibit further contact with children by contractors or volunteers who have not engaged in sexual abuse or harassment but violated other standards, policies or procedures related to sexual abuse or harassment. *Id.* § 411.82.

Southwest Key's agreements require compliance with these and other laws and regulations, including ORR's Policy Guide. *See* Ex. A at §§ IV.B.7, IV.F.9.a, VIII. The Policy Guide includes further requirements to implement ORR's zero-tolerance policy for sexual abuse, harassment, and inappropriate behavior. *See* Policy Guide § 4.2. For example, the Policy Guide requires a staff-to-minor ratio of 1:8 in the day and 1:16 at night, *id.* § 4.4.1, and reports of alleged sexual abuse must be sent to ORR officials and local law enforcement *within four hours* of learning of the allegation, *id.* § 4.10.2.

The regulations and Policy Guide also provide for robust monitoring and enforcement by ORR to ensure compliance. Upon receiving an allegation of sexual abuse or harassment, "ORR will monitor and evaluate the care provider to ensure that the care provider has fully complied" with ORR requirements. 45 C.F.R. § 411.71(a). Care providers must conduct incident reviews at the end of each investigation where an allegation was either "substantiated or unable to be substantiated but not determined to be unfounded" and provide a written report to ORR identifying any recommended changes in policy or practice. *Id.* § 411.101(a). A care provider must annually review all investigations and resulting incident reviews to assess and improve abuse and harassment detection, prevention and response efforts, and provide ORR with a written report of its findings. *Id.* § 411.101(b). ORR must audit care providers every three years to ensure compliance with its sexual abuse standards, and ORR has authority to expedite an audit if ORR believes a care provider may be "experiencing problems related to sexual abuse or sexual harassment." *Id.* § 411.111(a)-(b). If a care provider "does not meet"

ORR's standards, ORR will notify the provider, request a response and corrective action plan, and determine "disciplinary consequences for not responding within the required timeframes." *Id.* § 411.114; Policy Guide § 5.5.2. If a care provider fails to comply, ORR can withhold payment, terminate an award in whole or part, or initiate an administrative action barring future federal funding. 45 C.F.R. §§ 75.371-75.372. ORR has not taken such drastic action against Southwest Key. On the contrary, Southwest Key remains ORR's largest private shelter care provider. Dkt. 1 ¶ 17.[3]

The Complaint alleges that Southwest Key "made express contractual assurances it would comply with all federal statutes relating to nondiscrimination, including the Fair Housing Act." Dkt. 1 ¶ 18. Prior to filing the Complaint, the Department of Justice noted that Southwest Key signed Office of Management and Budget ("OMB") Form SF-424B, in which recipients of federal funds assure future compliance with a list of boilerplate provisions, one of which is "all Federal statutes relating to nondiscrimination," including "Title VIII of the Civil Rights Act of 1968" (the FHA). Ex. B ¶ 6. But that form, used by virtually every federal agency, begins with a disclaimer that "[c]ertain of these assurances may not be applicable to your project or program." Ex. B, Note. Southwest Key's cooperative agreements identify the specific "Applicable Regulations and Program Policies" (Section VIII), "Pertinent Federal Laws and Regulations for the UC Program" (Appendix A), and "[o]ther applicable federal regulations … listed in [ORR's] Standard Terms and Conditions for discretionary grants," with which Southwest Key must comply. *E.g.*, Ex. A; Dep't of Health & Hum. Servs., *General Terms & Conditions*, https://tinyurl.com/4v4k92d8 (attached as Ex. F). The FHA is not one of them.

## PROCEDURAL HISTORY

On July 17, 2024, the government filed the instant Complaint alleging a single cause of action under the FHA. Dkt. 1. The Complaint alleges that, between 2015 and 2023, Southwest Key submitted

---

[3] This is for good reason—ORR, the FBI, and Texas agencies did not substantiate most of the Complaint's alleged incidents.

multiple reports to ORR regarding instances of sexual abuse, harassment or misconduct, *id.* ¶¶ 35, 38, 40-56, 59-66, and that Southwest Key employees failed to report other known or suspected instances of misconduct, or otherwise violated Southwest Key policies and ORR requirements, *id.* ¶¶ 38, 57-66. The Complaint alleges that Southwest Key:

      a.      Made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

      b.      Discriminated in the terms, conditions, or privileges of the rental or sale of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

      c.      Made statements with respect to the sale or rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

      d.      Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

*Id.* ¶ 73. The Complaint seeks declaratory and injunctive relief, monetary damages, and civil penalties.

## LEGAL STANDARD

A court should grant a motion to dismiss when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Thus, claims may be dismissed under Rule 12(b)(6) on the basis of a dispositive issue of law." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quotations omitted). Although the Complaint's well-pleaded factual allegations must be accepted as if true, the Court may properly consider Southwest Key's website and contracts with ORR, as they are incorporated by reference in the Complaint (Dkt. 1 ¶¶ 13, 18, 25 & n.6), and the content of the official government reports and websites discussed herein. *See Emden v. Museum of Fine Arts*, 103 F.4th 308, 313 n.8 (5th Cir. 2024); *Huskey v. Jones*, 45 F.4th 827, 831 n.3 (5th Cir. 2022).

ARGUMENT

I.      **THE FHA DOES NOT APPLY TO ORR SHELTER CARE FACILITIES.**

A.      **SHELTER CARE FACILITIES ARE NOT "DWELLINGS."**

The Complaint's allegations hinge on Southwest Key operating a "dwelling." 42 U.S.C. § 3604(a)-(c); *see id.* § 3617. But Southwest Key's facilities are not remotely dwellings under any acceptable understanding of the word as defined in the FHA.

1.      The FHA defines "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." *Id.* § 3602(b). Thus, the critical question is whether a structure is "a residence" or "designed or intended" as one. Because the FHA does not define "residence," courts look to that term's ordinary meaning. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1214 (11th Cir. 2008). Modern dictionaries define "residence" as "[a] house or other fixed abode; a dwelling," *Black's Law Dictionary* (12th ed. 2024); "a building used as a home," *Merriam-Webster*, https://tinyurl.com/nhdvzf83 (last visited Sept. 18, 2024); or simply "a home," *Cambridge English Dictionary*, https://tinyurl.com/4y9mk5t8 (last visited Sept. 18, 2024). Dictionaries from the time of the FHA's passage similarly define "residence" as "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." *Webster's Third New Int'l Dictionary* 1931 (Philip B. Gove ed., 1968); *see Residence*, *Random House Dictionary of English Language* 1220 (Jess Stein ed., 1966) ("the place, esp. the house, in which one lives or resides; dwelling place; home").

A facility used to hold persons in government custody that they did not choose, from which they are not free to leave, and to which they do not intend to return, is not a "residence" in any ordinary sense of the word. Thus, facilities that "are intended to limit … freedom of movement" are

not "residence[s]." *Garcia v. Condarco*, 114 F. Supp. 2d 1158, 1162 (D.N.M. 2000). In *Garcia*, the court held that the FHA did not cover a city jail because "[a] jail is not, as the FHA requires, 'designed or intended for occupancy as a residence.' Rather, the primary purpose of a jail is to provide just punishment, adequate deterrence, protection of the public, and correctional treatment." *Id.* at 1161. The same is true of pre-trial detention centers. In *Ontiveros-Lerma v. Terrazas*, 2000 WL 36739442, at *2 (D.N.M. Sept. 8, 2000), the court explained that the FHA applies only if a facility permits the resident "to act upon one's intention in choosing a 'dwelling.'" The court recognized that the occupants do not view a detention center as a place where they "intend[] to remain" or "return to" because detainees have "no control whatsoever over where [they] reside[] or for how long." *Id.* Thus, the facility was not a "residence" because the detainee's "intentions regarding her place of habitation, whatever they may have been, were in fact completely irrelevant, not only as to where she resided, or more accurately, where she was held by authorities, but also as to whether and when she left and returned." *Id.*

The court in *Rodriguez v. New Mexico Children Youth & Families Department*, 2004 WL 7338065, at *5 (D.N.M. Feb. 4, 2004), reached a similar conclusion in holding that a "Boys' School" for juvenile detainees was not a dwelling. The court found that the Boys' School was analogous to a prison, and thus not a dwelling, because "juveniles at the [school] are sent to the facilities by the government and are not allowed to freely leave." *Id.* The court also noted that the plaintiffs' inability to choose where they lived was a "key differentiating factor" that brought the facility outside the FHA's scope. *Id.*

By contrast, facilities where persons are free to leave may fall within the ordinary meaning of "residence." For example, the Fifth Circuit has concluded that a sober-living facility, where recovering drug and alcohol addicts live and leave voluntarily, is a "dwelling." *Harmony Haus Westlake, LLC v. Parkstone Prop. Owners' Ass'n*, 851 F. App'x 461, 463 (5th Cir. 2021). Similarly, the Eleventh Circuit has held that voluntary sober-living facilities are "dwellings" where residents "may remain indefinitely, and some residents have remained" long after completing their treatment. *Schwarz*, 544 F.3d at 1215.

Congress did not intend to extend the FHA to facilities where people cannot choose to live and from which they cannot choose to leave. The FHA's "plain intent" is "to prohibit discrimination in the national market for housing." *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 210 (5th Cir. 2000). There is no market for custodial facilities among those in government custody. Extending the FHA to such facilities cannot "eliminate the discriminatory business practices which might prevent a person economically able to do so from purchasing a home." *Garcia*, 114 F. Supp. 2d at 1162 (citation omitted). Such "facilities are intended to limit, rather than facilitate, … freedom of movement." *Id.*

      2.      Far from persons choosing to buy, rent or vacate a residence, unaccompanied children placed in Southwest Key shelter facilities did not choose to be placed there, are not free to leave, and remain in ORR custody. ORR is charged with "making placement determinations for all unaccompanied … children who are in Federal custody." 6 U.S.C. § 279(b)(1)(C). "All unaccompanied children placed by ORR in care provider facilities remain in the legal custody of ORR and may be transferred or released only with ORR approval." 45 C.F.R. § 410.1004. ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(b)(2)(B). *Accord* 45 C.F.R. § 410.1201(c). ORR also may not release a child to a parent or other sponsor until ORR first determines that further "*detention* of the unaccompanied child is not required either to secure the child's timely appearance before DHS or the immigration court, or to ensure the child's safety." 45 C.F.R. § 410.1201(a) (emphasis added). Nor can an unaccompanied child "invoke the jurisdiction of a juvenile court to determine or alter the child's custody status or release from ORR custody," unless ORR provides "specific consent" to do so. *Id.* § 410.1209. Care providers must use "[c]ontrolled entry and exit from the premises to ensure unaccompanied children remain within the facility perimeter and to prevent access by the public without proper authorization." Policy Guide § 3.3.4. The average placement at Southwest Key is roughly 30 days. Ex. D (as of September 6, 2024, "the average length of time an unaccompanied child remained in ORR's care was 34 days"); *Southwest Key Programs, Inc. v. City of*

*Escondido*, 2017 WL 1094001, at *4 nn.9-10 (S.D. Cal. Mar. 23, 2017) (noting average stay of "27 days").

3.       Nothing in the Complaint supports its contention that "Southwest Key shelters are 'dwellings' within the meaning of the [FHA]." Dkt. 1 ¶ 27.

a.       The Complaint notes that Southwest Key's "shelter care" is less restrictive than other ORR placement designations. Dkt. 1 ¶ 15 n.2. True, but irrelevant. Children in shelter care facilities remain in ORR's legal custody, are not free to leave, and may not be released even to a parent without ORR approval. *See* 6 U.S.C. § 279(b)(2)(B); 45 C.F.R. §§ 410.1004, 410.1201(a), (c). That higher security facilities exist simply proves the point: care provider facilities are not "dwellings" because ORR controls where unaccompanied children are placed, where they are transferred, and when they can be released. *See* 45 C.F.R. § 410.1105(a)(1). A determination by ORR that a shelter care facility is the "least restrictive setting" to ensure a child's well-being and appearance at immigration proceedings does not cause the facility to become a dwelling. *Id.* § 410.1103(a).

b.       The Complaint's description of Southwest Key's facilities as "homelike settings," called "Casas," with the "look and feel" of "a dormitory setting,'" Dkt. 1 ¶¶ 20, 24, 25, also does not transform the facilities into "dwellings." Much of what the Complaint alleges, *see id.* ¶¶ 23-24, could also be said about minimum-security institutions operated by the Federal Bureau of Prisons, whose website touts their "dormitory housing," "limited or no perimeter fencing," work and educational programming, and access to mail, visitors, and phone calls. Federal Bureau of Prisons, *About Our Facilities*, https://tinyurl.com/4k8pt9u2; *Stay in Touch*, https://tinyurl.com/39t29hwt; *General Visiting Information*, https://tinyurl.com/mr3a3m4f (all last visited Sept. 18, 2024). As discussed above, the FHA does not regulate conditions in prisons or juvenile detention facilities. *See supra* pp. 10-12. No matter how well-appointed, a structure cannot be a "residence" if a person does not choose to be there, is not permitted to leave, and remains in government custody.

c.       The Complaint also alleges that the children in Southwest Key facilities "have

no place else to live" while they are placed there. Dkt. 1 ¶ 21. But that is because the children are in ORR's legal custody after having been apprehended, and federal law and ORR regulations prohibit them from leaving without ORR approval. The complete lack of choices just underscores that these facilities are not dwellings, any more so than prisons or juvenile detention facilities.

        d.      Finally, the Complaint notes that Southwest Key argued in unrelated litigation that its facilities were "dwellings." *Id.* ¶¶ 28-29 & n.7. But, in the only case where the issue was actually litigated, the court did not accept that argument, in part because of the "custodial nature" of the placement, *i.e.*, the children "have no choice in their placement at Plaintiff Southwest Key's facilities, which are designed to regulate where and how they may live and to limit, rather than facilitate, their freedom of movement. The [children] are not willing participants and their stays are transient," averaging "27 days." *Southwest Key Programs, Inc.*, 2017 WL 1094001, at *4 & nn.9-10.

## B.    THE ALLEGED CONDUCT DID NOT INVOLVE THE INITIAL PROVISION OF HOUSING, OR A "SALE" OR "RENTAL."

      The conduct alleged in the Complaint would not violate the FHA for two additional reasons. *First*, the allegations concern post-placement harassment and abuse, not discrimination in the initial provision of housing. *Second*, the allegations do not relate to a "sale" or "rental" under the FHA.

      1.      The Complaint's single cause of action alleges violations of section 3604(a), (b) and (c) of the FHA. Dkt. 1 ¶ 73(a)-(c). However, the statutory text and precedent establish that these provisions do not extend to discrimination against current occupants.

      "The Fifth Circuit has held that Section 3604(a) and 3604(b) … are limited to the initial 'sale or rental' of the property." *Hood v. Pope*, 2015 WL 225042, at *4 (S.D. Tex. Jan. 15, 2015) (discussing *Cox v. City of Dallas*, 430 F.3d 734, 741, 745-47 (5th Cir. 2005)), *aff'd*, 627 F. App'x 295 (5th Cir. 2015). Section 3604(a) makes it unlawful "[t]o refuse to sell or rent … or otherwise make unavailable or deny[] a dwelling to any person because of … sex." 42 U.S.C. § 3604(a). This plain language establishes that it is limited to conduct that occurs *before* a sale or rental; otherwise, the owner has not "refuse[d]"

to sell or rent, and the dwelling has not been made "unavailable." *Cox*, 430 F.3d at 740-44 (holding that illegal dumping that depressed neighbors' property values could not support an FHA claim). The Fifth Circuit has explained that "the simple language of § 3604(a)" focuses not on "habitability" but on "availability." *Id.* at 741; *see Hood*, 2015 WL 225042, at *5. That language covers claims about "'racial steering,' locking out owners of one race but not another, mortgage redlining, insurance redlining, exclusionary zoning—where the availability of housing for prospective owners or tenants is implicated." *Cox*, 430 F.3d at 741-42. It does not cover more general discrimination claims, even ones involving antisemitic vandalism or locating a highway near a Black neighborhood. *See id.* at 740-42 (discussing *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 328-29 (7th Cir. 2004); and *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 192 (4th Cir. 1999)).

Section 3604(b) prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," 42 U.S.C. § 3604(b), and has been similarly interpreted to refer to the time of sale or rental of a dwelling. *See Hood*, 2015 WL 225042, at *4; *Cox*, 430 F.3d at 745-46 ("[T]he 'services' subject to the alleged discrimination must be 'in connection' with the 'sale or rental of a dwelling,'" not "merely the 'dwelling' in general."). The Fifth Circuit found this "reading is grammatically superior and supported by the decisions of many courts," and it rejected an interpretation that would "unmoor[] the 'services' language from the 'sale or rental' language." *Cox*, 430 F.3d at 745-46 (citing cases).[4]

Section 3604(c) is likewise limited to the initial sale or rental of a property. It prohibits any discriminatory "notice, statement, or advertisement[] with respect to the sale or rental of a dwelling." 42 U.S.C. § 3604(c). Owners publish advertisements, statements, and notices before they sell or rent

---

[4] While the Fifth Circuit previously extended section 3604(b) to a discriminatory eviction, *see Woods-Drake v. Lundy*, 667 F.2d 1198, 1201-1202 (5th Cir. 1982), and has left open whether sections 3604(a) and (b) would apply to constructive eviction claims, *see Cox*, 430 F.3d at 745 n.32, *see also Hood*, 627 F. App'x at 298 (unpub.) (stating in *dicta* that section 3604(b) applies to actual or constructive eviction), the Complaint does not (and could not) plead actual or constructive eviction.

a property. Thus, courts have held that section 3604(c) creates liability "only when a defendant makes statements in connection with the *prospective* sale or rental of an available dwelling." *Greater New Orleans Fair Housing Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 654 (E.D. La. 2019) (emphasis added) (citing 42 U.S.C. § 3604(c); *United States v. Space Hunters, Inc.*, 2001 WL 968993, at *5 (S.D.N.Y. Aug. 24, 2001)). This interpretation is also consistent with the fact that section 3604(c) was passed at the same time as, and appears immediately after, section 3604(a) and (b). In sum, each of the FHA's relevant prohibitions is limited to discrimination in connection with the initial sale or rental of a property.

Requiring a tight nexus between the initial provision of the dwelling and the alleged discrimination makes sense given the statutory context. Courts interpret the FHA "to ensure that no one is denied the right to live where they choose for discriminatory reasons." *Jersey Heights*, 174 F.3d at 192. Limiting the FHA to the initial provision of housing prevents plaintiffs from "warping the FHA into a charter of plenary review." *Padgett v. Tex. Reg'l Asset Mgmt. LLC*, 2019 WL 13254312, at *3 (W.D. Tex. Mar. 6, 2019) (cleaned up). This straightforward limit prevents the FHA from being "pushe[d] … into a general anti-discrimination pose," *Cox*, 430 F.3d at 746, a result that Congress could not have intended. General anti-discrimination statutes, like 42 U.S.C. § 1983, include numerous safeguards to ensure that they reach only the conduct that Congress intended to outlaw. But "unlike general discrimination prohibitions enforced by § 1983, the FHA targets private activity, does not require a governmental policy or custom, and does not require proof of both discriminatory impact and intent." *Cox*, 430 F.3d at 746. Thus, the Court should reject an expansive interpretation of the FHA that end runs the statutory safeguards Congress included in other anti-discrimination statutes.

The Complaint does not allege sexual abuse or harassment in connection with an initial sale or rental of property. Rather, it alleges unrelated incidents, some *after* ORR placed an unaccompanied child in a Southwest Key facility, and others that did not occur at a Southwest Key facility at all. *See, e.g.*, Dkt. 1 ¶¶ 43 (hotel), 44 ("in transit" after permanently leaving facility). No "specific sales [or]

purchases were being blocked." *Cox*, 430 F.3d at 743. Nor did Southwest Key "condition[] … tenancies upon compliance with" discriminatory policies. *Padgett*, 2019 WL 13254312, at *3.

2.      The FHA claim independently fails because no "sale" or "rental" of property is alleged. There is no "sale" when ORR places an unaccompanied child at a Southwest Key facility; as the Complaint acknowledges, Southwest Key possesses and operates its facilities. Dkt. 1 ¶ 19. Nor is there a "rental" to an unaccompanied child. The FHA defines "[t]o rent" to include "to lease, to sublease, to let and otherwise grant *for a consideration* the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602(e) (emphasis added). Children placed in Southwest Key's facilities do not sign a lease or sublease, nor do they pay to stay there. Rather, ORR places them there, where they must remain, by law, until "transferred or released only with ORR approval." 45 C.F.R. § 410.1004; *see also id.* § 410.1201(a). Nor do ORR's grants to Southwest Key constitute "rental" payments. To the contrary, courts in analogous circumstances have held that there is no "rental" in connection with placements in pre-trial detention facilities and homeless shelters. *Ontiveros-Lerma*, 2000 WL 36739442, at *3 (finding no "rental" of pre-trial detention facility, as "federal officials were not contracting for housing, but for detention facilities, and Plaintiff was held at the [facility] against her will"); *Jones v. Volunteers of Am. Greater N.Y.*, 2022 WL 768681, at *8 (S.D.N.Y. Mar. 14, 2022) (finding no "rental" of homeless shelter where plaintiff "was *directed* to live" and did not pay). There is no material difference here.

3.      Finally, the Complaint alleges (at ¶ 73(d)) that Southwest Key violated section 3617 of the FHA, which, as relevant here, makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise of enjoyment of … any right granted or protected by" section 3604. 42 U.S.C. § 3617. Because the Complaint fails to allege an underlying violation of section 3604, its claim under section 3617 must fall as well. *See Hood*, 627 F. App'x at 300.

II.   **CONGRESS INTENDED COMPREHENSIVE, STATUTORILY MANDATED FEDERAL REGULATIONS, NOT THE FHA, TO ADDRESS SEXUAL ABUSE IN ORR SHELTER CARE FACILITIES.**

The FHA does not apply to ORR shelter care providers for another, independent reason: as Southwest Key's contracts make clear, Congress, HHS, and ORR passed and promulgated a series of laws and regulations that specifically address the prevention of sexual abuse and harassment of unaccompanied children in care provider facilities, and the remedies for noncompliance. *See, e.g.* Ex. A at § VIII & app. A; 45 C.F.R. pt. 411. These standards, which Congress directed be based on those applicable to federal prisons, 34 U.S.C. § 30307(d)(4), do not include the FHA—a statute "enacted to eradicate discriminatory practices within a sector of our Nation's economy," *Tex. Dep't of Hous. & Comm. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 539 (2015). The heavy regulation in this area confirms that Congress did not intend for the FHA, a general fair housing law, to apply. The Court should reject the Department of Justice's invitation to apply the FHA to a matter that Congress specifically directed ORR to handle, and against a provider that remains ORR's largest to this day.

In the Violence Against Women Reauthorization Act of 2013, Congress directed HHS to "publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of rape and sexual assault in facilities that maintain custody of unaccompanied … children." 34 U.S.C. § 30307(d)(1). These standards would apply "to facilities operated under contract with [HHS]." *Id.* § 30307(d)(2). Congress directed that HHS "shall give due consideration to the recommended national standards" "for the detection, prevention, reduction, and punishment of prison rape" promulgated under the Prison Rape Elimination Act, which "establish[ed] a zero-tolerance standard" for prison rape. *Id.* §§ 30302(1), 30307(a)(1), (d)(4).

Thereafter, in 2014, HHS published its comprehensive "Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment Involving Unaccompanied Children." 79 Fed. Reg. 77768 (Dec. 24, 2014) (codified at 45 C.F.R. pt. 411), which as explained above, address everything

from care provider preventive measures to reporting to enforcement. *Supra* pp. 5-8. ORR's Policy Guide further implements those regulations with additional concrete rules and guidance for care providers. *Supra* p. 7. In short, these extensive regulations mandated by Congress specifically and thoroughly address care provider requirements for preventing, detecting, and responding to sexual abuse and harassment of unaccompanied children. And, as discussed above, ORR is empowered to pursue potential noncompliance through audits, *see* 45 C.F.R. § 411.111(a)-(b), corrective action plans, *see id.* § 411.114; Policy Guide § 5.5.2, special award conditions, termination, and administrative enforcement actions, *see* 45 C.F.R. §§ 75.371-75.372.

This comprehensive statutory and regulatory framework, specifically directed to the prevention of sexual abuse or harassment at ORR care provider facilities, is further evidence that the FHA does not apply here. "It is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (cleaned up). "That is particularly true where … Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (cleaned up). This fundamental canon avoids "the superfluity of a specific provision that is swallowed by the general one, violating the cardinal rule that, if possible, effect shall be given to every clause and part of a statute." *Id.* (cleaned up). By contrast, the Complaint's attempt to extend FHA provisions related to the sale and rental of dwellings would swallow Congress's specific determination that ORR's detailed regulations should govern allegations of sexual abuse and misconduct of unaccompanied children in care provider facilities.

Confirming this point, ORR's cooperative agreements with Southwest Key list the specific "Applicable Regulations and Program Policies" (Section VIII) and "Pertinent Federal Laws and Regulations for the UC Program" (Appendix A), a list that does not include the FHA. Ex. A. Rather, it includes the "Violence Against Women Reauthorization Act of 2013," ORR's "Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment Involving Unaccompanied

Children," the "ORR Unaccompanied Children Policy Guide," and other federal statutes, regulations, and court decisions specifically intended to protect unaccompanied children in shelter care facilities. *Id.* Under the *expressio unius* canon of construction, "expressing one item of an associated group or series excludes another left unmentioned." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (cleaned up). That principle applies "when circumstances support a sensible inference that the term left out must have been meant to be excluded." *Id.* (cleaned up). If the FHA applied to Southwest Key's provision of shelter care to unaccompanied children, ORR would have listed it in the "Applicable Regulations" and "Pertinent Federal Laws and Regulations for the UC Program."

True, a standard OMB form used by various federal agencies says that recipients of federal funds agree to comply with boilerplate provisions that include "Title VIII of the Civil Rights Act of 1968" (the FHA). Ex. B ¶ 6. But the form plainly states at the outset that "[c]ertain of these assurances may not be applicable to your project or program." Ex. B, Note. Thus, if a statute like the FHA does not apply on its own terms to the program, this OMB boilerplate does not expand the statute's reach.

*     *     *

To be clear, a sexual abuse or harassment allegation in a Southwest Key facility is a very serious matter. This is why such allegations are subject to the comprehensive framework of congressionally and ORR-mandated regulations designed to prevent, detect and respond to abuse or harassment of unaccompanied children—including detailed requirements for the reporting and investigation of such matters, disciplinary action against individuals, and ORR's authority to terminate and take enforcement action against care providers that fail to comply with their obligations. *See supra* pp. 3-8. But such allegations do not state a claim under the FHA, and the Court should not accept the Department of Justice's invitation to extend the FHA in such a novel fashion.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint.

20

Date:   September 23, 2024                    Respectfully submitted,

                                              **WILLIAMS & CONNOLLY LLP**
                                              By:     */s/  Christopher N. Manning*
                                                        Christopher N. Manning

                                              Lisa S. Blatt (*pro hac vice*)
                                              Christopher N. Manning (D.C. Bar No. 464049)
                                              Tomas P. Castella (Tex. Bar No. 24095813)
                                              680 Maine Avenue SW
                                              Washington, DC 20024
                                              Tel.      (202) 434-5000
                                              Fax       (202) 434-5029
                                              Email   LBlatt@wc.com
                                                        CManning@wc.com
                                                        TCastella@wc.com

                                              *Attorneys for Defendant Southwest Key Programs Inc.*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 23rd day of September 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will send electronic notice of filing to all counsel of record.

_/s/ Christopher N. Manning_

Attorney for Defendant