**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:24-CV-00798-DII |
| | § | |
| SOUTHWEST KEY PROGRAMS, INC., | § | |
| | § | |
| Defendant. | § | |

**<u>RESPONSE TO MOTION TO DISMISS</u>**

Southwest Key's Motion is about whether their shelters for unaccompanied children, called Casas (Spanish for "house" or "home"), are "dwellings" under the Fair Housing Act ("FHA"). Southwest Key previously filed two federal lawsuits arguing that their Casas are "dwellings" under the FHA, seeking to obtain the protections of the FHA. Now, facing FHA liability for egregious sexual harassment and abuse of the children in their care, Southwest Key reverses course and argues their Casas are not in fact "dwellings." Under the principle of judicial estoppel, Southwest Key may not enjoy the protections while evading the obligations of the FHA.

Southwest Key is also wrong on the merits. Their Casas are plainly "dwellings" because they have all the characteristics of a home. Moreover, Southwest Key's agreements with the government state they are providing "residential" services in exchange for billions of federal dollars, and Southwest Key promises, as a condition for federal grants, to comply with the FHA. In support of their new legal position, Southwest Key argues their Casas are not dwellings, but essentially prisons. They also argue the children in their care are stripped of FHA protections because those children do not pay rent, were harassed *after* they moved in, and are otherwise covered by a regulatory framework governing residential shelters. These arguments are meritless,

and similar arguments have been rejected by courts.  Southwest Key's Casas do not have a penal purpose.  The consideration Southwest Key receives for providing housing is sufficient to establish the alleged harassment occurred in connection with the rental of a dwelling, and the fact that it happened sometime after the child first moved in is irrelevant.  Furthermore, the mere existence of other regulatory measures to prevent sexual harassment does not exempt Southwest Key from FHA liability.  Those regulations coexist with the FHA, which bars broader discrimination and provides unique remedies to individuals aggrieved by discrimination.  The Court should deny Southwest Key's Motion.

## **BACKGROUND**

The Office of Refugee Resettlement ("ORR") of the United States Department of Health and Human Services ("HHS") is responsible for the care of unaccompanied children.[1]  8 U.S.C. § 1232(b)(3); *see* Dkt. 1 ¶ 11 (quoting 6 U.S.C. § 279(b)(1)(A)).  ORR must place children "in the least restrictive setting that is in the best interest of the child."  *See* Dkt. 1 ¶ 12 (quoting 8 U.S.C. § 1232(c)(2)(A)).  Placement options include "shelters, group homes, individual family homes, heightened supervision facilities, or secure facilities."  45 C.F.R. § 410.1102.  Most children are placed in "non-secure" standard program facilities referred to as residential shelters, which will typically be their home until they are released to a sponsor; reach the age of 18; or depart, or are removed from, the United States.  *See* 45 C.F.R. §§ 410.1104, 410.1001 (defining "shelter" and "standard program"); Dkt. 1 ¶ 12.  The children at these non-secure residential shelters (known as "Casas") are at issue in this case.[2]

---

[1] Unless otherwise specified, references to "unaccompanied children" or "children" have the same meaning as that set forth in 6 U.S.C. § 279(g)(2).  *See* Dkt. 1 ¶ 9.

[2] This case does not concern children placed in more secure settings, including those whom ORR determines have committed or been charged with a criminal offense, discussed *infra* at 13,

Southwest Key provides housing to children in those Casas under cooperative agreements with ORR.  Dkt. 1 ¶¶ 16-17, 20.  In these agreements, Southwest Key acknowledges they are providing "residential services," and they agree to follow "[s]tate residential care licensing requirements."  *See* Dkt. 22-1 at 4-6.  As a condition for receiving federal funds—over $3 billion since 2015—Southwest Key certified they would comply with the FHA.  Dkt. 1 ¶¶ 17-18.

While the children are at a Casa, it is their home.  Dkt. 1 ¶¶ 12, 20-26.  As Southwest Key has explained, while residing in Casas, "the children have no place else to live." *Id.* ¶ 21.[3]  Children stay in a Casa or other residential shelter an average of 34 days.  Dkt. 22-4 at 3.  Because they typically must remain at the shelter until they are released to a sponsor or turn 18, however, there is no limit on how long they may reside there, and they do not know how long they will stay.  *See* Dkt. 1 ¶ 12.

Casas "look and feel like dormitor[ies]," with two to four beds per room, and common areas for the children to "eat, play, read or relax."  *Id.* ¶ 25.  Children personalize and decorate their rooms, choose their own clothes, and keep their bedrooms unlocked. *Id.* ¶ 24.  A typical day for children in a Southwest Key Casa includes breakfast, school, recreation, lunch, dinner, homework, snacks, and bedtime.  *Id.*  Moreover, children are not shielded from the outside world. They receive mail, visitors, and phone calls; play outside; and go on educational and recreational field trips.  *Id.*

Until this action, Southwest Key consistently asserted these characteristics rendered their Casas "dwellings" under the FHA.  Dkt. 1 ¶ 28.[4]  In 2015, Southwest Key sued the City of

---

pose a danger, are likely to run away, or require special care.  *See* 45 C.F.R. § 410.1105; Dkt. 1 n.2.

[3] Ex. A at 8.

[4] *See* Ex. C at 18-29; Ex. B ¶ 8; *see also* Ex. D at 2-3.

Escondido for denying a permit to open a Casa, arguing the proposed home was a "dwelling" under the FHA, and that denial of the permit was an FHA violation. *See* Ex. C at 18-29.[5]  Based on Southwest Key's arguments, the *Escondido* court denied the city's motion for summary judgment, holding that "there is a triable issue of material fact on whether the facility is a dwelling under the FHA." *Southwest Key Programs, Inc. v. City of Escondido*, No. 3:15-cv-01115, 2017 WL 1094001, at *5 (S.D. Cal. Mar. 23, 2017).  After this ruling, the parties reached a settlement. *See* Ex. H.  In 2018, Southwest Key again argued a proposed Casa was a "dwelling" under the FHA in a lawsuit they filed against the City of Houston.  Ex. B.  In support, Southwest Key submitted a declaration affirming they provided "housing for unaccompanied minors" that was "not a penal or correctional facility."  Ex. D ¶¶ 4, 14.  That second case settled while dispositive motions were pending, and Southwest Key was permitted to open Casa Sunzal in Houston—one of the Casas now at issue in the Complaint. Dkt. 1 ¶ 19.

Here, the United States alleges Southwest Key engaged in a pattern or practice of sexual harassment and abuse against the children residing in their Casas, in violation of the FHA. 42 U.S.C. §§ 3604(a)-(c), 3617;  Dkt. 1 ¶ 73.[6]

---

[5] The United States filed a statement of interest supporting Southwest Key's position that the home was a "dwelling."  Ex. G.

[6] Southwest Key asserts, without support, that "most of the alleged misconduct described in the Complaint was never substantiated."  Dkt. 22 at 7.  The Court should ignore this assertion, and Southwest Key acknowledges their motion is limited to the legal issues raised.  *Id.*  Moreover, Southwest Key fails to note that some of the egregious conduct at issue was deemed unsubstantiated *by Southwest Key itself.*  For example, Southwest Key documents detail a Youth Care Worker who sexually touched a child, tried kissing him, and told the boy to "sácame el pene y pélalo," translated to "take his dick out and rub it."  Dkt. 1 ¶ 44.  It is true that Southwest Key's internal investigators found the incident "unsubstantiated."  *Id.*  But the employee *admitted* to inappropriately touching the child, and a federal grand jury criminally indicted the employee for the very conduct Southwest Key deemed "unsubstantiated."  *Id.*

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). The United States respectfully requests that this Court take judicial notice of the attached Exhibits from Southwest Key's *Houston* and *Escondido* cases described in the United States' Appendix. *See Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588-589 (5th Cir. 2020) (permitting judicial notice of court records at Rule 12(b)(6) stage); *see also Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (citing Fed. R. Evid. 201).

## ARGUMENT & AUTHORITIES

### I.    Southwest Key's Casas Are Dwellings Under The FHA.

#### A.    The Court Should Estop Southwest Key from Evading FHA Coverage.

Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638 (5th Cir. 2024) (citation omitted).

Judicial estoppel "prevents internal inconsistency, precludes litigants from 'playing fast and loose' with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment." *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996). It applies to both factual and legal positions. *See Republic of Ecuador v. Connor*, 708 F.3d 651, 656–57 (5th Cir. 2013); *McBryde v. Freedom Mortg*., No. A-22-CV-01038-RP, 2023 WL 2959869, at *3 (W.D. Tex. Apr. 14, 2023), *report and recommendation adopted*, 2023 WL 3313110 (W.D. Tex. May 8, 2023).

Judicial estoppel requires two elements: "(1) the position of the party being estopped must be clearly inconsistent with its previous [position] and (2) that party must have convinced the court to accept that previous position." *Occidental,* 117 F.4th at 638 (cleaned up, citation omitted). A "third consideration is whether, absent estoppel, the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.* (quoting *In re 3 Star Props., L.L.C*., 6 F.4th 595, 605 (5th Cir. 2021)) (cleaned up). Here, all three considerations warrant judicial estoppel.

First, Southwest Key's current position on FHA coverage plainly contradicts their position in previous proceedings. In their Motion to Dismiss, Southwest Key insists their "facilities are not remotely dwellings under any acceptable understanding of the word as defined in the FHA." Dkt. 22 at 16. This position is a full about-face from their previous arguments and averments in *Escondido* and *Houston*. Below are some of those legal and factual reversals:

| Southwest Key Then | Southwest Key Now |
|---|---|
| "Southwest Key cares for children in a homelike setting . . . . Children stay in the same rooms, which they may personalize. Their day resembles that of any child, with breakfast, schooling, lunch, recreation, dinner, homework, snack, and bedtime. They play at local parks or schools and take field trips to baseball games, movies, or museums. . . . Accordingly, the proposed group home[7] is a dwelling." Ex. C at 19. | "The Complaint's description of Southwest Key's facilities as 'homelike settings,' called 'Casas,' with the 'look and feel' of 'a dormitory setting,' Dkt. 1 ¶¶ 20, 24-25, also does not transform the facilities into 'dwellings.'" Dkt. 22 at 19. |
| "It is immaterial that unaccompanied children do not choose their group homes. Children in general do not choose their homes . . . . A home remains a dwelling regardless of whether children live there at a parent's direction or that of an agency acting *in loco parentis*." Ex. C at 23. | "[A] structure cannot be a 'residence' if a person does not choose to be there. . . . The complete lack of choices just underscores that these facilities are not dwellings." Dkt. 22 at 19-20. |
| "[T]here is nothing in the text or purpose of the [FHA] that makes so-called freedom of choice or willing participant an essential element of what it means to be a dwelling." Ex. E at 42:15-18. | "Congress did not intend to extend the FHA to facilities where people cannot choose to live and from which they cannot choose to leave." Dkt. 22 at 18. |
| "The occupants of Casa Sunzal will be free to move about. No mechanical restraints will be used at the facility. There are no locks on internal or external doors, and while they are verbally discouraged from leaving, and the rules prohibit them from doing so, the children are able to leave the facility at any time." Ex. D ¶ 16. | "ORR places children, and the children are not free to leave." Dkt. 22 at 8. |
| "The City confuses 'custody' of children with 'detention.'. . . . It is [] absurd to suggest that ORR 'custody' of unaccompanied children *in loco parentis* means they live in 'detention facilities.' The City's misguided position to the contrary hinges on a decision limited to its radically different facts, which held that a jail is not a dwelling [citing *Garcia*].'" Ex. C at 24. | "A facility used to hold persons in government custody . . . is not a 'residence' in any ordinary sense of the word." Dkt. 22 at 16-17 (citing *Garcia*). |

---

[7] Although in *Escondido*, Southwest Key refers to the shelter as a "group home," the housing proposed was the same as the Casas at issue in this case: ORR shelter care. *See* Ex. C at 14-17. Under the ORR classifications, "group home" is a term of art: housing for specific populations with only 4 to 12 children. *See* Dkt. 1 ¶ 15 n.2, ORR Policy Guide: Guide to Terms, https://perma.cc/DJ4K-TS4L (defining "group home").

| "This case is fundamentally different [than a jail or prison] because the primary purpose of a Southwest Key group home . . . for unaccompanied children is to provide safe supportive child centered housing for those children until they're placed with a parent or care giver or relative in the community.  They are not held all the way to trial, as it were, as in a jail."  Ex. E at 49: 3-11. | "[T]hese facilities are not dwellings, any more so than prisons or juvenile detention facilities." Dkt. 22 at 20. |
|---|---|

Southwest Key argued plainly and convincingly that their Casas were dwellings under the FHA when it suited them to do so.  Now that they face FHA liability for sexual harassment and abuse of children, Southwest Key makes the exact opposite argument and factual assertions.

Second, the *Escondido* court accepted Southwest Key's assertions when it denied the city's motion for summary judgment.  *Escondido*, 2017 WL 1094001, at *6.  Southwest Key asserts "the [*Escondido*] court did not accept [Southwest Key's] argument."  Dkt. 22 at 20.  This is incorrect. The city moved for summary judgment arguing that Southwest Key's proposed Casa was not a "dwelling" as a matter of law.  *Escondido*, 2017 WL 1094001, at *3.  The court denied the motion—the result Southwest Key sought—ruling a jury could conclude that Southwest Key's Casas were dwellings.  *Id.* at *6.  The parties later settled.  Ex. H.

These are the same circumstances that warranted judicial estoppel in *Hall v. GE Plastic Pacific PTE Ltd.*, which held that a favorable denial of summary judgment constituted judicial acceptance. 327 F.3d 391, 398-399 (5th Cir. 2003).  The Fifth Circuit ruled the district court "necessarily accepted[] and relied on" the plaintiff's factual averments in denying the defendant's summary judgment motion and setting the case for trial.  *Id.* at 394, 399.  It did not matter that the parties settled before a final disposition.  *Id.* at 399.  The court's acceptance of the plaintiff's position "as a preliminary matter" in denying summary judgment was enough.  *Id.* at 398 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999)).

Third, absent estoppel, Southwest Key "would derive an unfair advantage or impose an unfair detriment on the opposing party." *Occidental*, 2024 WL 4219295, at *5 (citation and quotation omitted). Southwest Key used the FHA in *Houston* and *Escondido* in an effort to obtain city permits to operate their Casas. Southwest Key benefitted financially from this, and between 2015 and 2023, Southwest Key received monetary compensation from HHS to operate Casas, representing that they would comply with the FHA. Dkt. 1 ¶¶ 16-18. To allow Southwest Key to reverse course now to avoid FHA liability for sexual abuse and harassment of children within their Casas would permit precisely the type of "fast and loose" gamesmanship that the judicial estoppel doctrine was designed to prevent.

**B. The United States Sufficiently Alleges Southwest Key's Casas Are "Dwellings."**

**1. The children view and treat the Casas as their homes.**

Even if this Court declines to estop Southwest Key from evading FHA coverage, their motion still lacks merit. The FHA defines "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families." 42 U.S.C. § 3602(b); *see also id.* § 3602(c) (defining "family" to include "a single individual"). Southwest Key's Casas fit comfortably within this definition and the precedent interpreting it.

Because the statute does not define "residence," it must be given its "ordinary and natural meaning," consistent with the "overall policies and objectives of the statute." *United States v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005). The FHA's objective, "to provide, within constitutional limitations, for fair housing throughout the United States," 42 U.S.C. § 3601, mandates its terms be given a "generous construction." *Oxford House v. City of Edmonds*, 514 U.S. 725, 731 (1995) (citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1975)).

A residence is "a temporary or permanent dwelling place, abode or habitation to which one

intends to return as distinguished from the place of temporary sojourn or transient visit[.]" *Lakeside Resort Enters., LP v. Board of Sup'rs of Palmyra Twp.*, 455 F.3d 154, 157 (3d Cir. 2006) (quoting Webster's Third International Dictionary); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1214 (11th Cir. 2008) (same).   This understanding accommodates a wide variety of residences—including children's group homes, homeless shelters, residential treatment facilities, and nursing homes—while excluding transient lodgings like hotels and motels not at issue here. *See Schwarz*, 544 F.3d at 1214-1216; *Lakeside Resort*, 455 F.3d at 156-158.

Southwest Key's Casas are the children's homes, to which they will return until such time as they are released to a sponsor or turn 18.  *See* Dkt. 1 ¶ 12.  While their stays last on average 34 days, there is no limitation on how long they can stay before they turn 18 and, unlike guests in hotels or similar accommodations, they enter not knowing the date they will depart.  *See id.*; Dkt. 22-4 at 3.  Courts have found similar living arrangements of comparable or shorter duration to be dwellings within the meaning of the FHA.[8]  For example, in *Lakeside Resort Enterprises*, the court deemed a recovery home to be a dwelling because its residents "eat meals together (separated by gender), return to their rooms in the evening, receive mail at the facility . . . hung pictures on their walls[,] had visitors in their rooms . . . [and] treated it like a home for the duration of their stays" even though "residents in treatment were apparently not allowed off the grounds of the facility unsupervised."  455 F.3d at 159-160.  Likewise, Casas are residences because the children return to their Casa at the end of each day, where they have their own space to personalize or decorate,

---

[8] *See Lakeside Resort Enters., L.P.*, 455 F.3d at 158-60 (drug and alcohol treatment facility where average length of stay was 14.8 days);  *Conn. Hosp. v. City of New London*, 129 F. Supp. 2d 123, 132-133 (D. Conn. 2001) (homes for persons with substance use disorder with an average stay of six weeks);  *Project Life, Inc. v. Glendening*, No. 98-2163, 1998 WL 1119864, at *1 & n.4 (D. Md. Nov. 30, 1998) (residential education facility with an average one-month stay);  *Lauer Farms, Inc. v. Waushara Cnty. Bd. of Adjustment*, 986 F. Supp. 544, 558-560 (E.D. Wis. 1997) (seasonal housing for migrant workers).

play, do homework, receive mail or visitors, and eat meals together. Dkt. 1 ¶ 24; *Schwarz*, 544 F.3d at 1215-6 ("the more occupants treat a building like their home . . . the more likely it is a 'dwelling.'"). The children view and treat Casas as their home.

### 2.  It is irrelevant that unaccompanied children are in ORR custody and do not choose their residence.

That unaccompanied children are in ORR's custody while in Southwest Key's care and that ORR chooses where they reside have no bearing on whether Casas are "dwellings" under the FHA. A "custody" determination concerns the relationship between the child and the government (here, ORR). *Reno v. Flores*, 507 U.S. 292, 298 (1993).[9] A "dwelling" determination concerns the relationship between the child and the building in which they reside.

In placing unaccompanied children in shelters, ORR acts "as guardian *in loco parentis*." Ex. C at 23 (citing H.R. Rep. No. 109-143 at 127 (2005)). In analogous circumstances, courts have found foster and group homes remain dwellings regardless of whether children live there at a parent's direction or that of an agency acting *in loco parentis*. *See Diamond House of SE Idaho, LLC v. City of Ammon*, 381 F. Supp. 3d 1262, 1275-1276 (D. Idaho 2019) (applying FHA to "group foster homes" in which children were "wards of the State in legal custody"); *Children's All. v. City of Bellevue*, 950 F. Supp. 1491, 1493 (W.D. Wash. 1997) (group care facility for children was covered under FHA where "[p]lacement of children in group homes arises by court transfer of custody to [a state agency or] . . . licensed child-placement agency, or by written consent of the legal custodian."); *cf. Cohen v. Twp. of Cheltenham*, 174 F. Supp. 2d 307, 311, 322 (E.D. Pa. 2001) ("residential child care facility" where children are assigned placement by a physician was a

---

[9] *See Flores*, 507 U.S at 298 ("'Legal custody' rather than 'detention' more accurately describes the reality of the arrangement, however, since these are not correctional institutions but facilities that meet 'state licensing requirements for the provision of shelter care, foster care, group care, and related services to dependent children.'") (citations omitted).

"dwelling"); *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 547 (W.D. Va. 1975) (home where some children were referred "by courts or social agencies [or] . . . on the application of their parents or guardians" was a dwelling).

Nor does the involvement of a federal agency or restrictions on choice or freedom of movement change the fact that the Casas are the children's residences. In *Firetree, Ltd v. Norwalk*, for example, the plaintiff operated "halfway houses . . . for individuals referred by the Bureau of Prisons [BOP] . . . [,] pursuant to fee for service contracts with [BOP]" and "under the jurisdiction of the [BOP]." No. 3:17-cv-1088, 2018 WL 4398253, at *1-2, *8 (D. Conn. Sept. 14, 2018). Residents could leave with permission from Firetree staff. *Id.* at *1. The defendants moved to dismiss the FHA claim, arguing that the residents "are prison inmates and . . . have no right to the housing of their choice." *Id.* at *7. The court rejected these arguments and found the halfway house was a "dwelling" even though it "housed persons under the jurisdiction of the BOP." *Id.* at *7-8. Similarly, in *D.K. by L.K. v. Teams*, the court found that disabled residents of a state-operated "community residence providing room and board, . . . and 24–hour staff support and supervision," stated claims under the FHA, while also noting they were in "state custody" for the purpose of their 42 U.S.C. § 1983 claim. 260 F. Supp. 3d 334, 343 n.2, 355, 366 (S.D.N.Y. 2017).

Southwest Key cites three decisions in the District of New Mexico that have held jails and other carceral settings are not "dwellings" under the FHA.[10] In *Garcia,* for example, the court held a city jail was not a dwelling under the FHA because it was "not designed or intended as a 'residence' . . . [but] designed and intended to be a penal facility." 114 F. Supp. 2d at 1161. The

---

[10] *See Garcia v. Condarco*, 114 F. Supp. 2d 1158, 1161 (D.N.M. 2000) (city jail); *Rodriguez v. New Mexico Children Youth & Families Dep't*, No. CV 03-173, 2004 WL 7338065, at *2, *5 (D.N.M. Feb. 4, 2004) (juvenile detention facility); *Ontiveros-Lerma v. Terrazas,* No. 99-1008, 2000 WL 36739442, at *2-3 (D.N.M. Sept. 8, 2000) (federal pre-trial detention center).

jail's purposes "to provide just punishment, adequate deterrence, protection of the public, and correctional treatment" were "[e]ssential to the distinction between a home and a detention facility." *Id.* Similarly, in *Ontiveros-Lerma* and *Rodriguez,* the courts recognized that the punitive purpose or carceral setting of those facilities disqualified them as dwellings. *See Ontiveros-Lerma,* 2000 WL 36739442, at *2-3; *Rodriguez,* 2004 WL 7338065, at *5.

Southwest Key Casas, however, do not serve a punitive or penal purpose and are not carceral settings.[11]  Children are assigned to Casas after ORR determines that they do not have a record of criminal conduct, pending charges, pending delinquency proceedings, or an adjudication of delinquency, that warrants a more secure setting, do not present a danger to themselves and others, and do not require special supervision or care.  *See* 45 C.F.R. § 410.1105; Dkt. 1 n.2.  Short of foster care or release, shelters like Southwest Key's Casas are the least restrictive environment within the continuum of housing for unaccompanied minors.  Dkt. 1 ¶15 n.2.  As Southwest Key once explained, Casas

> are not 'detention centers' or 'jails.'  They are group homes or shelters.  There is no punitive purpose associated with placement of the children in the shelters.  The children have unrestricted egress to the street.  The children are not locked in their rooms or otherwise restrained . . . .  The buildings and campuses are not locked down to prevent egress.

Ex. B ¶ 33; *see also* Ex. C at 14 (Southwest Key arguing Casa is not a "children's jail," "juvenile lockup," "detention facility," or "correctional facility," and is not "punitive.").

The mere lack of choice and presence of restrictions do not convert a residence into a prison.[12]  Children generally cannot choose where they reside.  Someone, whether their parent,

---

[11] None of ORR's programs serve a punitive or penal purpose. *See generally* 45 C.F.R. § 410.1003.

[12] *United States v. Univ. of Nebraska at Kearney*, 940 F. Supp. 2d 974, 980-83 (D. Neb. 2013) (dormitories were "dwellings" and not analogous to jails even though freshmen who were

their legal guardian, or the government, has custody of children and places restrictions on their freedom.  And as Southwest Key stated in *Escondido*, all children have rules.  Ex. C at 22 ("Nor do rules convert a dwelling into a jail.  All children have rules.  The rules for children in Southwest Key's care are similar to if not less strict than rules in other children's group homes.").  Southwest Key went on to explain, "[w]hen the state is 'assuming the parents' role, the state also assumes the parents' authority to limit the minor's freedom of action . . . rules for behavior and access to rooms do not convert a group home to a 'detention facility.'" *Id.* at 23; *see Univ. of Nebraska at Kearney*, 940 F. Supp. 2d at 980-83 (lack of choice and significant rules and restrictions did not convert residence to jail).  Southwest Key's previous arguments, based on their own knowledge of their Casas, are dispositive, notwithstanding Southwest Key's attempt to repudiate them now.

## II.   The United States Sufficiently Alleges the Children Were Harassed in Connection With the "Rental" of a Dwelling Throughout Their Stay.

### A.   The FHA Applies Even Though the Children Do Not Pay Rent.

Southwest Key argues there is no "sale" or "rental" of property, and thus no FHA violation, because the children do not pay rent.  Dkt. 22 at 23.  This argument contradicts the plain language of the FHA.  "To rent," under the FHA "includes to lease, to sublease, to let and **otherwise to grant for a consideration the right to occupy premises not owned by the occupant**." 42 U.S.C. § 3602(e) (emphasis added).  Although the unaccompanied children–like most children–do not themselves pay rent, Southwest Key receives consideration from ORR in the form of billions of grant dollars to house children.  Dkt. 1 ¶ 16.  This consideration qualifies as "rent" under the FHA. *See Woods v. Foster*, 884 F. Supp 1169, 1174-5 (N.D. Ill. 1995).

It is commonplace for government and other third parties to pay the requisite consideration

---

under 19 were required to live there, did not choose their roommate, and had to follow significant rules and restrictions).

for housing.  For instance, in *Woods,* which involved alleged sexual harassment at a homeless shelter, the defendants argued the shelter was not covered by the FHA because the operator did not rent or sell space and the shelter was free to those who lived here.  *Id.*  The shelter operator was compensated by the United States Department of Housing and Urban Development.  *Id.* at 1174-75.  The court held "there is no reason to conclude that the scope of the FHA should be limited to those who pay for their own housing."  *Id*. at 1175.  It found that the definition of "rent" under the FHA "does not require that the consideration be paid by the occupant" and that "the money received [under the government contract] is undoubtedly 'consideration' granted for the right to occupy the premises of the shelter."  *Id.*  Other courts have agreed.[13]

Southwest Key's reliance on *Jones v. Volunteers of Am. Greater N.Y.* is misplaced.  Dkt. 22 at 23 (citing No. 2020-cv-5581, 2022 WL 768681 at *8 (S.D.N.Y. Mar. 14, 2022)).  *Jones* was decided under 42 U.S.C. 3604(f), an FHA provision not at issue here that has different language than that of Sections 3604(a)-(b).  *Id.*[14]  Furthermore, in *Jones*, there is essentially no discussion of how the particular shelter is funded or whether grant funding constitutes "consideration" under the FHA.  *Id.*  Here, similar to *Woods*, *Hunter*, *Defiore*, and *Goddard*, the consideration Southwest

---

[13] *See, e.g.*, *Hunter on behalf of A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 177 (D.D.C. 2014) (holding that federal funds for housing homeless individuals paid to apartment manager "satisfy the broad definition of 'to rent'" under Section 3602(e)); *Anonymous v. Goddard Riverside Cmty. Ctr., Inc.*, No. 96-CIV-9198, 1997 WL 475165, at *3 n.4 (S.D.N.Y. July 18, 1997) (assuming federal funds constitute consideration for housing for purposes of resolving motion to dismiss); *Defiore v. City Rescue Mission of New Castle*, 995 F. Supp. 2d 413, 419 (W.D. Pa. 2013) (noting that consideration need not come from the resident and that federal subsidies for housing could constitute consideration, and thus "rent"); *Hughes Mem'l Home,* 396 F. Supp at 549 (noting that children's home is "prohibited from discrimination even with respect to residents for whom no payment is made"); *Lakeside Resort Enters., LP*, 455 F. 3d at 158-59 (recovery home funded largely by health insurance payments is a dwelling).

[14] Sections 3604(f)(1) prohibits specified disability discrimination involving "any buyer or renter," while Sections 3604(a)-(b) prohibit specified conduct against "any person." *See also Hunter*, 64 F. Supp. 3d at 177-78 (D.D.C. 2014).

Key receives through HHS grants qualifies as "rent" under the FHA.

**B.   The FHA Prohibits Sexual Harassment of Residents Throughout Tenancy.**

Southwest Key asserts the FHA only prohibits discrimination in the "initial" sale or rental of housing and provides no remedy for "post-placement harassment and abuse." Dkt. 22 at 20.[15] In other words, Southwest Key seeks dismissal because the sexual harassment and abuse of children in their care alleged occurred *after* the children moved in. These limitations, however, do not appear in the statute.[16] Sections 3604(a)-(c) of the FHA make it unlawful to:

(a) [r]efuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . sex . . . [;]

(b) [d]iscriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex . . . [; or]

(c) [m]ake, print, or publish, … any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . sex . . . .

42 U.S.C. §§ 3604(a)-(c).   Southwest Key's argument is without merit.   Every court of appeals to face the issue has concluded the FHA prohibits sexual harassment of residents *throughout* their

---

[15] The United States alleges Southwest Key's conduct violates Sections 3604(a)-(c) and 3617. Dkt. 1 ¶ 73. Southwest Key's sole argument with respect to Sections 3604(a)-(c) is that these provisions do not reach post-acquisition conduct and, even if they did, there was no rental or sale. Dkt. 22 at 20-23. Southwest Key then argues that because there is no violation of Section 3604, there is also no violation of Section 3617. *Id.* at 23. Southwest Key does not otherwise challenge the adequacy of the United States' allegations with respect to these provisions in this motion to dismiss.

[16] *See Georgia State Conf. of the NAACP v. City of La Grange*, 940 F.3d 627, 632 (11th Cir. 2019) ("we conclude that § 3604(b) is unambiguous and reaches certain post-acquisition conduct").

tenancy.[17]  Put simply, "the protections afforded by the [FHA] do not evaporate once a person takes possession of her house, condominium, or apartment."  *Wetzel*, 901 F.3d at 861.

To justify their position to the contrary, SWK relies on *Cox*, a case in which homeowners sued the city for failure to police an illegal dump.  Dkt. 22 at 20 (citing *Cox v. City of Dallas*, 430 F.3d 734 (5th Cir. 2005)).  *Cox*, however, held "only that § 3604(a) gives no right of action to current owners claiming that the value or 'habitability' of their property has decreased due to discrimination in the delivery of protective city services."  430 F.3d at 742–43 (citations and footnotes omitted).  The *Cox* court recognized that its decision did not foreclose other claims for other post-acquisition conduct under both Sections 3604(a) and (b), such as a discriminatory "actual or constructive eviction."  *Cox*, 430 F.3d at 746.  Unsurprisingly, numerous courts have rejected the contention that *Cox* bars FHA claims involving post-acquisition conduct.[18]

---

[17] *See Fox v. Gaines*, 4 F.4th 1293, 1295-96, 1295 n.5 (11th Cir. 2021); *Wetzel v. Glen St. Andrew Cmty, LLC.,* 901 F.3d 856, 867 (7th Cir. 2018); *Quigley v. Winter,* 598 F.3d 938, 946-48 (8th Cir. 2010); *Honce v. Vigil,* 1 F.3d 1085, 1088-90 (10th Cir. 1993); *Hall v. Meadowood Ltd. P'ship*, 7 Fed. Appx. 687, 689 (9th Cir. 2001) (recognizing viability of FHA harassment claim, but affirming summary judgment for defendant on particular facts); *Shellhammer v. Lewallen*, 770 F.2d 167 (Table), 1985 WL 13505, *1-*3 (6th Cir. 1985) (same).

[18] *Treece v. Perrier Condo. Owners Ass'n, Inc*., 593 F. Supp. 3d 422, 437 (E.D. La. 2022) ("Defendants cite to *Cox v. City of Dallas* for the proposition that the protections under § 3604(a) do not extend to post-acquisition conduct. However, their reading of *Cox* is incorrect."); *Downing v. Pondugula*, No. 4:21-CV-1006, 2022 WL 1117446, at *5 (N.D. Tex. Mar. 29, 2022), *report and recommendation adopted*, 2022 WL 1117203 (N.D. Tex. Apr. 14, 2022) (former tenant sufficiently alleged post-acquisition sexual harassment claim under Section 3604(b) and Section 3617); *Padgett v. Texas Reg'l Asset Mgmt., LLC*, No. 5:18-CV-396-OLG, 2019 WL 13254312, at *3 (W.D. Tex. March 6, 2019) (holding familial status discrimination claims were "not subject to dismissal simply because the discriminatory acts they allege occurred post-acquisition").  Inexplicably, Southwest Key cites *Padgett* for the opposite position.  *See* Dkt. 22 at 22.

**III.    Congress Did Not Exempt Southwest Key From FHA Liability.**

Finally, Southwest Key argues a provision of the Violence Against Women Reauthorization Act of 2013 ("VAWA 2013") that directed HHS to "publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of rape and sexual assault in facilities that maintain custody of unaccompanied children" implicitly exempts Southwest Key from any FHA liability for sexual harassment and abuse of children in their care. Dkt. 22 at 24 (citing 34 U.S.C. § 30307(d)(1)). Southwest Key fails, however, to point to a single statutory provision in the FHA, VAWA, or any other law that creates this exemption. *See Oxford House,* 514 U.S. at 731-2 (holding that a statutory exemption from the FHA should "sensibly [be] read narrowly in order to preserve the primary operation of the [policy of the FHA].") (quotation omitted). Thus, Southwest Key asks the Court to infer sweeping protection from liability that is notably absent from the statutory text. Southwest Key's argument "encounter[s] head-on the 'cardinal rule . . . that repeals by implication are not favored.'" *Morton v. Mancari*, 417 U.S. 535, 549 (1974) (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)). Rather, "[p]resented with two statutes, [courts] will 'regard each as effective'—unless Congress' intention to repeal is 'clear and manifest,' or the two laws are 'irreconcilable.'" *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (quoting *Morton*, 417 U.S. at 550-551). Southwest Key is wrong. As it previously argued, the adoption of national standards to prevent sexual abuse "does not exempt unaccompanied children from fair housing law." Ex. C at 11-12 (citations omitted). "Congress could not have intended to and did not, in fact, write those children out of the Fair Housing Act entirely." Ex. E at 31: 8-13. [19]

---

[19] For the reasons laid out above, this position was accepted by the *Escondido* court when it denied Escondido's Motion for Summary Judgment, and Southwest Key should be judicially estopped from asserting the opposite position now. *See* Ex. C at 21-22.

Southwest Key also argues that the only federal laws that apply to their facilities are those in an appendix to their Cooperative Agreements. Dkt. 22 at 25. This is absurd. A federal statute does not lose its force simply by going unmentioned in a list in a contractual document. Rather, the Cooperative Agreements contain a *non-exhaustive* list of federal laws, programmatic authorities, and guidance that Southwest Key must follow to comply with their grant. *See* Dkt. 22-1 at 43-4.[20] If ORR's contractual grant documents could limit the laws Southwest Key needed to comply with, Southwest Key could escape liability under numerous federal laws, including not only the FHA, but, among others, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the False Claims Act, 31 U.S.C. § 3729;[21] the Internal Revenue Code, 26 U.S.C. § 1, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (as amended); and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (as amended). This is a preposterous result.

Courts have routinely found the FHA and other regulatory schemes can coexist. *See Dehoyos v. Allstate Corp.,* 345 F.3d 290, 295 (5th Cir. 2003) ("every circuit that has considered the question has determined that federal anti-discrimination laws may be applied in an insurance context, even where the state insurance agencies have mechanisms in place to regulate discriminatory practices."); *Larkin v. State of Mich. Dep't of Soc. Servs.,* 89 F.3d 285, 292 (6th Cir. 1996) ("we in no way mean to intimate that the . . . [FHA] prohibits reasonable regulation and

---

[20] Southwest Key attaches a blank OMB Standard Form 424B, which contains certifications of compliance with the FHA, among other statutes. *See* Dkt. 22-2. Southwest Key's argument that the form notes that some assurances may not apply does not help Southwest Key, because Southwest Key continued to sign the assurance referencing the FHA *after* they had twice argued in court that the FHA applied to their shelters. Exs. A and B.

[21] Southwest Key acknowledges that they are subject to the False Claims Act. *See* Ex. F (summarizing False Claims Act investigations against Southwest Key); *see also United States of America ex rel. Jana Garza v. Southwest Key Programs, Inc.*, 1:22-cv-00467 (E.D. Tex. Oct. 26, 2022) (pending False Claims Act case).

licensing procedures for [group homes].").  As the Seventh Circuit has noted, "[d]uplication is not conflict."  *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 295 (7th Cir. 1992).  And courts have routinely found other regulated housing contexts, including banking, nursing homes, group homes, and public housing, to be subject to the FHA.  *See, e.g., Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 216 n.45 (5th Cir. 2000) ("there is . . . nothing [in land use code] that allows local officials to avoid federal or constitutional requirements."); *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1102 (3d Cir. 1996) (nursing homes are subject to the FHA); *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1542-3 (11th Cir. 1994) (FHA applied to public housing siting); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1494–95, 1495 n.4 (10th Cir. 1995) (FHA applied to group home notwithstanding complex state regulatory requirements); *United States v. Kleinbank*, No. 17-cv-00136, at 12 (D. Minn. Jan. 20, 2018), *available at* https://perma.cc/8LAF-Z6E2 ("neither the FHA nor ECOA forecloses the United States Attorney General from initiating an action against a party determined to be in [Community Reinvestment Act] CRA compliance by the FDIC [the bank's federal regulatory agency]").  The Court should reject this argument.

<u>**CONCLUSION**</u>

Southwest Key cannot use the FHA as a tool to *open* their Casas and earn billions of dollars in federal grants while evading the FHA to *operate* those Casas.  The residents are not, as Southwest Key now suggests, akin to prisoners or felons.  They are **children**.  Like all children, they cannot choose where they live.  Like all children, they are entitled to fair housing, free from discrimination, abuse, and harassment, as provided by the FHA.

The United States respectfully requests that the Court deny Southwest Key's Motion to Dismiss.

Dated: October 30, 2024

Respectfully Submitted,

JAIME ESPARZA
United States Attorney
Western District of Texas

*s/ Liane Noble*
LIANE NOBLE
(TX Bar No. 24079059)
Assistant U.S. Attorney
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Phone: (512) 916-5858
Email: Liane.Noble@usdoj.gov

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

*s/ Jimmy A. Rodriguez*
JIMMY A. RODRIGUEZ
(TX Bar No. 24037378)
Civil Division Deputy Chief
U.S. Attorney's Office
1000 Louisiana, Suite 2300
Houston, TX 77002
Phone: (713) 567-9000
Email: Jimmy.Rodriguez2@usdoj.gov

*Attorneys for Plaintiff United States of America*

MERRICK B. GARLAND
Attorney General

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

*s/ Mary Rosenberg*
TIMOTHY J. MORAN
Deputy Chief
KINARA A. FLAGG (NY Bar No. 5092143)
JENNA A. RADEN (DC Bar No. 1724701)
KATIE LEGOMSKY (CA Bar No. 275571)
MARY ROSENBERG (IL Bar No. 6310037)
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, D.C. 20530
Phone: (202) 532-5016
Fax: (202) 514-1116
Email: Kinara.Flagg@usdoj.gov
Jenna.Raden@usdoj.gov
Kathryn.Legomsky@usdoj.gov
Mary.E.Rosenberg@usdoj.gov