UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No: 1:24-CV-00798-DII |
| SOUTHWEST KEY PROGRAMS, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT SOUTHWEST KEY PROGRAMS, INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

WILLIAMS & CONNOLLY LLP

Lisa S. Blatt (*pro hac vice*)
Christopher N. Manning (D.C. Bar No. 464049)
Tomas P. Castella (Tex. Bar No. 24095813)
680 Maine Avenue SW
Washington, DC 20024

*Attorneys for Defendant Southwest Key Programs Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT.................................................................................................................................. 1

I.   THE FHA DOES NOT APPLY TO ORR SHELTER CARE FACILITIES. ........... 1

    A.   SOUTHWEST KEY'S FACILITIES ARE NOT "DWELLINGS." .............. 1

    B.   THERE IS NO "RENTAL," OR AN INITIAL PROVISION OF HOUSING. ........................................................................................................ 7

II.  ORR'S CONGRESSIONALLY MANDATED RULES SUPPORT THAT THE FHA DOES NOT APPLY TO SEXUAL ABUSE IN ORR SHELTER CARE FACILITIES................................................................................................................ 9

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES
## CASES

*Barrios v. Centaur*, 942 F.3d 670 (5th Cir. 2019) ................................................................. 4

*Children's All. v. City of Bellevue*, 950 F. Supp. 1491 (W.D. Wash. 1997) ........................... 3

*Cohen v. Twp. of Cheltenham*, 174 F. Supp. 2d 307 (E.D. Pa. 2001) ................................... 3

*Conn. Hosp. v. City of New London*, 129 F. Supp. 2d 123 (D. Conn. 2001) ......................... 2

*D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334 (S.D.N.Y. 2017) ............................................... 3

*Diamond House of SE Idaho v. City of Ammon*, 381 F. Supp. 3d 1262 (D. Idaho 2019) ...... 3

*Firetree, Ltd. v. Norwalk*, 2018 WL 4398253 (D. Conn. Sept. 14, 2018) .............................. 3

*Fox v. Gaines*, 4 F.4th 1293 (11th Cir. 2021) ......................................................................... 8

*Freeman v. Quicken Loans*, 626 F.3d 799 (5th Cir. 2010) ..................................................... 7

*Garcia v. Condarco*, 114 F. Supp. 2d 1158 (D.N.M. 2000) ............................................... 3, 5

*Hall v. GE Plastic Pacific PTE*, 327 F.3d 391 (5th Cir. 2003) ............................................... 5

*Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*,
   388 F.3d 327 (7th Cir. 2004) ............................................................................................. 8

*Hood v. Pope*, 627 F. App'x 295 (5th Cir. 2015) ................................................................... 8

*Hood v. Pope*, 2015 WL 225042 (S.D. Tex. Jan. 15, 2015) ................................................... 8

*In re Oparaji*, 698 F.3d 231 (5th Cir. 2021) .......................................................................... 5

*Jenkins v. NYC Dep't of Homeless Servs.*, 391 F. App'x 81 (2d Cir. 2010) .......................... 8

*Jenkins v. NYC Dep't of Homeless Servs.*, 643 F. Supp. 2d 507 (S.D.N.Y. 2007) ................. 8

*Jones v. Volunteers of Am. Greater N.Y.*, 2022 WL 768681 (S.D.N.Y. Mar. 14, 2022) ........ 8

*Lakeside Resort Enters. v. Bd. of Supervisors of Palmyra Twp.*,
   455 F.3d 154 (3d Cir. 2006) ........................................................................................... 2, 7

*Lauer Farms, Inc. v. Waushara Cnty. Bd. of Adjustment*,
   986 F. Supp. 544 (E.D. Wis. 1997) .................................................................................... 2

*Ontiveros-Lerma v. Terrazas*, 2000 WL 36739442 (D.N.M. Sept. 8, 2000) .................. 3, 7, 8

*Project Life, Inc. v. Glendening*, 1998 WL 1119864 (D. Md. Nov. 30, 1998) ....................... 2

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) .................................................. 9

*Republic of Ecuador v. Connor*, 708 F.3d 651 (5th Cir. 2013) ................................................................... 6

*Rodriguez v. N.M. Child. Youth & Families Dep't*,
  2004 WL 7338065 (D.N.M. Feb. 4, 2004) ............................................................................................ 4

*S. Falls Corp. v. Kalkstein*, 349 F.2d 378 (5th Cir. 1965) ......................................................................... 9

*Schwarz v. City of Treasure Island,* 544 F.3d 1201 (11th Cir. 2008) ...................................................... 2

*Southwest Key Programs, Inc. v. City of Escondido*,
  2017 WL 1094001 (S.D. Cal. Mar. 23, 2017) .............................................................................. 4, 5, 6

*U.S. ex rel. Long v. GSDMIdea City*, 798 F.3d 265 (5th Cir. 2015) ........................................................ 5

*United States v. Hughes Mem. Home*, 396 F. Supp. 544 (W.D. Va. 1975) ........................................ 3, 7

*United States v. Kleinbank*, No. 17-cv-00136 (D. Minn. Jan. 20, 2018) .............................................. 10

*United States v. Sup. Ct. of N.M.*, 839 F.3d 888 (10th Cir. 2016) ........................................................... 6

*United States v. Univ. of Neb.*, 940 F. Supp. 2d 974 (D. Neb. 2013) ..................................................... 4

*Wetzel v. Glen St. Andrew Living Cmty.*, 901 F.3d 856 (7th Cir. 2018) ................................................. 8

*Woods v. Foster*, 884 F. Supp. 1169 (N.D. Ill. 1995) .............................................................................. 7

**STATUTES**

6 U.S.C. § 279 ............................................................................................................................................ 4

Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq.* ......................................................................... passim

  § 3602 ............................................................................................................................................ 1, 7, 8

  § 3604 ............................................................................................................................................ 2, 7, 8

  § 3613 .................................................................................................................................................... 6

  § 3617 .................................................................................................................................................... 2

In its initial brief ("Mot."), Southwest Key Programs, Inc. explained why the Fair Housing Act ("FHA") does not apply to facilities used for the temporary detention of unaccompanied children apprehended at the southern border and in the legal custody of the Office of Refugee Resettlement ("ORR"). The government's Opposition ("Opp.") offers no reason to conclude otherwise.

*First*, the notion that Southwest Key facilities are "dwellings" subject to the FHA ignores that children lack freedom of choice: they arrive after being apprehended; remain in ORR custody; and lack freedom to choose a facility, come and go, or return after a transfer or release. *See infra* pp. 1-4. The government urges judicial estoppel on this point, but there is no basis for that doctrine to apply, as Southwest Key's prior arguments were not judicially accepted, and its legal arguments here present no threat to judicial integrity on this critical issue. *See infra* pp. 4-6. *Second*, even if the FHA did apply, ORR grants do not constitute "rent," and the government does not dispute that it fails to allege discrimination in the initial provision of housing or an eviction. *See infra* pp. 7-9. *Finally*, ORR's regulations for preventing sexual abuse do not create an "exemption" or repeal by implication but, rather, merely confirm that the FHA does not apply here in the first place. *See infra* pp. 9-10.

This Motion asks the Court to find that the FHA does not apply in this context. But to be clear, both ORR and Southwest Key have a zero-tolerance policy for all forms of sexual misconduct, and ORR could terminate Southwest Key's contracts if there were truly a pattern of abuse. Instead, ORR has placed 100,000 children there and continues to do so. The Complaint should be dismissed.

## ARGUMENT

**I.     THE FHA DOES NOT APPLY TO ORR SHELTER CARE FACILITIES.**

    **A.     SOUTHWEST KEY'S FACILITIES ARE NOT "DWELLINGS."**

        1.     A facility that briefly holds children apprehended at the border and in federal custody is not a "residence" and, thus, not a "dwelling" under 42 U.S.C. § 3602(b). Mot. 10-14. The government acknowledges that the term "residence" must be given its ordinary and natural meaning,

1

which, it concedes, requires an "*inten[t] to return*," as opposed to a "temporary sojourn or transient visit." Opp. 10 (emphasis added) (citation omitted). It also concedes that stays are temporary, "last[ing] on average 34 days." Opp. 10. These concessions dispose of the government's arguments:[1]

*First*, the element of choice is utterly lacking. Unaccompanied children cannot choose where to go, how long to stay, or whether to return. The government suggests that children "view and treat" Southwest Key facilities "as their homes," Opp. 9, and choose to "return to their Casa at the end of each day," Opp. 10, but the Complaint and the law undercut this fiction. The government does not dispute that ORR regulations prevent children from choosing a facility, require children to remain within the facility perimeter, give ORR complete control over transfer, forbid release (even to parents) until ORR determines that further "detention" is not required, and block voluntary return. Mot. 4, 12 (citing regulations). Thus, an unaccompanied child does not intend to enter or return to a facility.

As to length of stay, while the government suggests that "[c]ourts have found similar living arrangements of comparable or shorter duration to be dwellings within the meaning of the FHA," Opp. 10 & n.8, its cited cases are not "similar" at all, as the residents at issue all chose to reside in the facilities.[2] And, while the government suggests "there is no limitation" on duration because children could, in theory, be held until age 18, Opp. 10, (citing Dkt. 1 ¶ 12; Dkt. 22-4 at 3), its cited sources identify no extended stays, confirm its concession that stays "average 34 days" (Opp. 10), and state

---

[1] The government also does not contest that the 42 U.S.C. § 3617 claim must be dismissed if its claims under section 3604 fail. *See* Mot. 17; Opp. 4, 16 n.15.

[2] *See Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1207 (11th Cir. 2008) ("halfway house" where patients chose to enroll and pay rent); *Lakeside Resort Enters. v. Bd. of Supervisors of Palmyra Twp.*, 455 F.3d 154, 158 (3d Cir. 2006) (rehabilitation facility where patients resided until depletion of "health-insurance funding"); *Conn. Hosp. v. City of New London*, 129 F. Supp. 2d 123, 133 (D. Conn. 2001) (rehabilitation facility in which "willing participants" chose to live); *Lauer Farms, Inc. v. Waushara Cnty. Bd. of Adjustment*, 986 F. Supp. 544, 559 (E.D. Wis. 1997) (work camp providing housing "for so long as [workers] worked the … fields"); *Project Life, Inc. v. Glendening*, 1998 WL 1119864, at *1 (D. Md. Nov. 30, 1998) (facility for residential recovery program in which plaintiffs "would like to participate").

that "ORR is working to further reduce length of care," Dkt. 22-4 at 3.

*Second*, the government asserts (without citation) "[i]t is irrelevant that unaccompanied children are in ORR custody" because the "dwelling" inquiry should focus on "the relationship between the child and the building," not the "child and the government." Opp. 11. This argument ignores the very reason for a child's "relationship" with a shelter facility: they have been apprehended at the border and, thus, lack freedom to choose a facility or to come and go while awaiting immigration proceedings. Mot. 4, 12. This is fundamentally different from a traditional "*in loco parentis*" relationship (*e.g.*, a school), or long-term alternative housing like "foster and group homes." Opp. 11.[3] The government cites two cases purportedly involving facilities that restricted choice and freedom of movement. Opp. 12 (citing *Firetree, Ltd. v. Norwalk*, 2018 WL 4398253 (D. Conn. Sept. 14, 2018); *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334 (S.D.N.Y. 2017)). But the "dwelling" issue was not litigated in either, and the facts are plainly inapposite: *Firetree* involved a halfway house where some, if not all, individuals "choose to reside," 2018 WL 4398253 at *1, and *D.K.* involved a long-term-care facility for disabled persons whose custodial limitations had nothing to do with law enforcement, 260 F. Supp. 3d at 342.

By contrast, the government concedes that multiple district court decisions have held that jails and detention facilities are not "dwellings" under the FHA. Opp. 12 & n.10 (citing cases). The government attempts to distinguish these cases by arguing that Southwest Key's facilities "do not serve a punitive or penal purpose and are not carceral settings," Opp. 13, but the "paramount" factor in those cases was "freedom of choice." *Garcia v. Condarco*, 114 F. Supp. 2d 1158, 1162 (D.N.M. 2000); *see Ontiveros-Lerma v. Terrazas*, 2000 WL 36739442, at *2 (D.N.M. Sept. 8, 2000) ("The central inquiry …

---

[3] The government's authorities either involve long-term placements in alternative housing, *see Cohen v. Twp. of Cheltenham*, 174 F. Supp. 2d 307, 311 (E.D. Pa. 2001) (facility providing "normalized home-type environment for abused children" for "nine or ten months" or more); *United States v. Hughes Mem. Home*, 396 F. Supp. 544, 547 (W.D. Va. 1975) (children were "permanent residents"), or did not analyze whether the facilities were "dwellings," *see Diamond House of SE Idaho v. City of Ammon*, 381 F. Supp. 3d 1262 (D. Idaho 2019); *Children's All. v. City of Bellevue*, 950 F. Supp. 1491 (W.D. Wash. 1997).

3

is whether the occupant intends to remain for any significant period of time and whether the occupant views it as 'a place to return to.'" (citation omitted)); *Rodriguez v. N.M. Child. Youth & Families Dep't*, 2004 WL 7338065, at *5 (D.N.M. Feb. 4, 2004) (finding lack of "ability to choose" "a key differentiating factor"). There is no "freedom of choice" here: unaccompanied children are placed in Southwest Key facilities because they were apprehended by U.S. Customs and Border Protection, Dkt. 22-3 at 2, have no say in their placement, and are not allowed to freely leave because they have unlawfully entered the United States and must appear for legal proceedings, *see* 6 U.S.C. § 279(b)(2)(A)(i). Nor do Southwest Key's facilities become "dwellings" because they are the "least restrictive" setting (Opp. 13) to ensure a child's appearance. Mot. 13. As the government does not dispute, minimum-security institutions share many similarities to Southwest Key facilities. Mot. 13.

Finally, the government argues that "lack of choice" does not convert a residence into a prison, noting "all children have rules." Opp. 13-14. But this is not a case about bedtimes or homework. It is about children who are apprehended at the border and placed in facilities they did not choose and cannot freely leave. As the government's case concluded, dormitories are "dwellings" because students "choose to enroll" at the school and "have a freedom of choice that is quite unlike going to jail." *United States v. Univ. of Neb.*, 940 F. Supp. 2d 974, 980 (D. Neb. 2013). No such freedom exists here.

2. The government also urges application of judicial estoppel (Opp. 5-9), but that doctrine does not apply. *First*, it requires judicial acceptance—*i.e.*, that Southwest Key "convinced the court to accept [its] previous position." *Barrios v. Centaur*, 942 F.3d 670, 678 n.7 (5th Cir. 2019) (citation omitted). But, Southwest Key's prior "dwelling" argument was not accepted in the *City of Houston* case, which the government concedes "settled while dispositive motions were pending." Opp. 4. And the court in *Southwest Key Programs, Inc. v. City of Escondido*, 2017 WL 1094001 (S.D. Cal. Mar. 23, 2017), did not accept the arguments the government quotes (Opp. 7-8, 14, 18 n.19). Instead, the court stated just the opposite: (1) "[t]he custodial nature of the [children's ('UAC')] placement, even in a placement

4

appropriate for minors, argues in favor of Defendants' position that the proposed facility was not a dwelling under the FHA," *Escondido*, 2017 WL 1094001 at *4 (citing *Garcia*, 114 F. Supp. 2d at 1162); (2) "the FHA is not intended to cover mandatory placement of an UAC in custodial facilities like Plaintiff Southwest Key's, even when such detention is as humane as possible," *id.* at *5; (3) "[t]he undisputed fact remains that UAC are not free to leave and have no choice in their placement," *id.*; and (4) UAC's receipt of "education, health care, counseling, and other services at Plaintiff Southwest Key's facilities until their legal status in the United States is resolved does not make [the] facilities akin to a university or boarding school. … [T]he main purpose of … [the] facilities is to detain the UAC after they are apprehended by federal law enforcement authorities until their release from custody or removal from the United States," *id.* That *Escondido* denied summary judgment (Opp. 8) is irrelevant; it also did not grant judgment to Southwest Key, Dkt. 23-6 at 47-48. Without judicial acceptance, "application of the doctrine is unwarranted because no risk of inconsistent results exists." *In re Oparaji*, 698 F.3d 231, 237 (5th Cir. 2021).[4]

*Second*, "[b]ecause judicial estoppel is equitable in nature, trial courts are not *required* to apply it," even if "the elements of the doctrine have been met." *U.S. ex rel. Long v. GSDMIdea City*, 798 F.3d 265, 271 (5th Cir. 2015). "Rather, courts should determine if applying judicial estoppel is appropriate in light of the specific facts of each case and the doctrine's purpose of protecting the integrity of the judicial process." *Id.* at 272 (cleaned up). Even where the elements are met, judicial estoppel does not apply when "the integrity of the judiciary would not be threatened." *Oparaji*, 698 F.3d at 235.

Here, even if the judicial acceptance element had been met, there would be no reason to apply estoppel, as Southwest Key's legal arguments pose no threat to the integrity of the judiciary. Indeed,

---

[4] These facts distinguish this case from *Hall v. GE Plastic Pacific PTE*, 327 F.3d 391 (5th Cir. 2003), cited at Opp. 8, where the "the previous court had 'necessarily accepted, and relied on'" the plaintiff's "repeated[]," "unequivocal[]" factual averments in prior litigation. *Id.* at 398-99.

5

courts outside the Fifth Circuit have concluded that the doctrine should not apply to legal positions at all. *See, e.g.*, *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 912 (10th Cir. 2016).[5] Nor would Southwest Key "derive an unfair advantage or impose an unfair detriment on" the government by advancing its arguments here. Opp. 9 (citation omitted). The government draws a strained connection between the *Houston* and *Escondido* settlements and monetary compensation from HHS, Opp. 9 (citing Dkt. 1 ¶¶ 16-18), but (1) the Complaint does not connect the settlements to additional compensation from HHS; (2) the Complaint's list of facilities does not identify a single one operating in Escondido, Dkt. 1 ¶ 19 (chart) & n.3; and (3) *Houston* settled prior to judicial decision, Opp. 4, so it cannot support estoppel.[6]

By contrast, the Department of Justice's lock-in view of estoppel would threaten judicial integrity. No court has ever held that facilities that temporarily shelter unaccompanied children in federal custody are subject to the FHA or its sweeping anti-discrimination provisions, which, in contrast to ORR's carefully crafted regulations, could impose vicarious liability for even a single violation by an employee, impose substantial damages and penalties, and create a private right of action for any "aggrieved person," 42 U.S.C. § 3613(a)(1)(A). The government's position would effectively compel an unreasoned, erroneous decision on that critical legal issue—a dramatic expansion of the FHA's reach that would make it untenable for providers to assist in responding to the humanitarian crisis at the border. This would have ruinous implications not only for ORR's shelter care program, but for ICE facilities, other private detention centers, and minimum-security correctional institutions.

---

[5] Despite a circuit split, the Fifth Circuit has applied judicial estoppel to legal positions. *Compare Republic of Ecuador v. Connor*, 708 F.3d 651, 656-57 (5th Cir. 2013), *with, e.g.*, *Sup. Ct. of N.M.*, 839 F.3d at 912. Southwest Key believes the correct rule is to limit the doctrine to positions of fact, in order to avoid inconsistent, confusing, and erroneous legal holdings. Ultimately, this Court must follow *Connor*, but this does not compel application of judicial estoppel for the reasons stated herein.

[6] The government also argues that Southwest Key's submission of a boilerplate OMB form was a representation of FHA compliance. Opp. 9. But the form expressly states that "[c]ertain of these assurances may not be applicable to your project or program," and ORR's listing of "Pertinent Federal Laws and Regulations for the UC Program" does not include the FHA. Mot. 8, 20, Exs. A & B.

**B. THERE IS NO "RENTAL," OR AN INITIAL PROVISION OF HOUSING.**

1. The government does not dispute that (1) 42 U.S.C. §§ 3604(a), (b), and (c) require a "sale" or "rental"; (2) no sale is alleged; and (3) unaccompanied children do not sign leases or pay rent. Mot. 17. Nevertheless, the government argues there was a "rental" because Southwest Key receives ORR grants "to house children" in its facilities. Opp. 14-15. This argument fails for several reasons:

*First*, neither the Complaint nor Southwest Key's agreements (Dkt. 22-1) purport that ORR is renting or leasing Southwest Key facilities.

*Second*, the government relies on cases involving the provision of housing as a government or private benefit. Opp. 15 & n.13 (citing cases). But ORR does not place children at a Southwest Key facility as a government benefit—rather, it does so because they have been apprehended and must be detained for immigration proceedings. In this regard, the children are no different than the pre-trial detainee in *Ontiveros-Lerma*, who "did not rent the premises she occupied" and could not be "considered the intended beneficiary of any rental agreement." 2000 WL 36739442, at *3. Southwest Key cited this case (Mot. 17), but the government ignores this holding.

Rather, the government relies on *Woods v. Foster*, 884 F. Supp. 1169, 1175 (N.D. Ill. 1995), which incorrectly interpreted the phrase "otherwise grant for a consideration" to include government funding. This phrase appears in 42 U.S.C. § 3602(e), which defines "rent" as "to lease, to sublease, to let and otherwise grant for a consideration the right to occupy premises." Under the canon of *noscitur a sociis*, which "dictates that words grouped in a list should be given related meaning," *Freeman v. Quicken Loans*, 626 F.3d 799, 804 (5th Cir. 2010), "grant for a consideration" must be interpreted similarly to the terms that precede it ("lease," "sublease," and "let")—all of which involve transactions with occupants. Under the government's interpretation, inmates would be "renting" their cells.[7]

---

[7] Other cases the government cites do not discuss the definition of "rent." *See Lakeside Resort*, 455 F.3d at 156 n.6; *Hughes Mem. Home*, 396 F. Supp. at 549 (section 3604(a) applies beyond "sale or rental").

7

Indeed, numerous courts have held that "rent" excludes government subsidies. *See* Mot. 17 (citing *Ontiveros-Lerma*, 2000 WL 36739442, at *3; *Jones v. Volunteers of Am. Greater N.Y.*, 2022 WL 768681, at *8 (S.D.N.Y. Mar. 14, 2022)). The government ignores *Ontiveros-Lerma*'s holding on this issue. It tries to distinguish *Jones* as involving section 3604(f), but the issue there, as here, was whether the facts satisfied section 3602(e)'s definition of "rent." 2022 WL 768681 at *8. And at least one district court has expressly rejected *Woods*'s atextual interpretation and held that "[a] far more plausible reading of the statute would limit the word 'rent' to consideration paid by the person who has the right to occupy the dwelling." *Jenkins v. NYC Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 519 (S.D.N.Y. 2007), *aff'd on other grounds*, 391 F. App'x 81 (2d Cir. 2010). The FHA claim is properly dismissed on this basis.

2.  The government also does not dispute that the Complaint fails to allege discrimination in the initial provision of housing. While the government argues that "every court of appeals to face the issue has concluded the FHA prohibits sexual harassment of residents *throughout* their tenancy," it cites only non-binding, out-of-circuit decisions, most applying Title VII's sexual-harassment standard. *See* Opp. 16-17 & n.17 (citing cases).[8] By contrast, the Fifth Circuit has expressly held that subsections 3604(a) and (b) "are limited to the initial 'sale or rental' of the property," *Hood v. Pope*, 2015 WL 225042, at *4 (S.D. Tex. Jan. 15, 2015) (discussing *Cox v. City of Dallas*, 430 F.3d 734, 741, 745-47 (5th Cir. 2005)), *aff'd*, 627 F. App'x 295 (5th Cir. 2015), "reach only discrimination that adversely affects the availability of housing rather than the habitability," and do not apply to "current owners who claim merely a decrease in … habitability," *Cox*, 430 F.3d at 741-42. *See* Mot. 14-16 & n.4.

The government also notes that *Cox* left open the possibility of claims alleging "'actual or

---

[8] This standard allows plaintiffs to plead that the harassment was "severe or pervasive enough to interfere with the terms, conditions, or privileges of … residency." *Wetzel v. Glen St. Andrew Living Cmty.*, 901 F.3d 856, 861-62 (7th Cir. 2018); *see also, e.g.*, *Fox v. Gaines*, 4 F.4th 1293, 1296 n.6 (11th Cir. 2021). But unlike Title VII, which "protects the job holder as well as the applicant," the FHA "contains no hint either in its language or its legislative history of a concern with anything but *access* to housing." *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004).

8

constructive eviction.'" Opp. 17 (quoting 430 F.3d at 746). But, "the Complaint does not (and could not) plead actual or constructive eviction." Mot. 15 n.4. The government does not contend otherwise. And for good reason: as *Cox* makes clear, constructive eviction sets a high bar. 430 F.3d at 745 n.32. It occurs when a landlord denies "essential services relating to a dwelling, such as mortgage financing, sewer hookups, zoning approval, or basic utilities," *id.* at 742 n.20 (citation omitted), where "continued residency is not objectively reasonable," *id.* n.21. But other misconduct, even an "orchestrated harassment campaign," is not enough. *Id.* n.20. The government does not attempt to link its allegations to this standard—indeed, this section of its brief cites no factual allegations at all.[9] Finally, constructive eviction requires surrender of possession by the tenant, *S. Falls Corp. v. Kalkstein*, 349 F.2d 378, 385 (5th Cir. 1965) (applying Texas law), which is not alleged here.

## II. ORR'S CONGRESSIONALLY MANDATED RULES SUPPORT THAT THE FHA DOES NOT APPLY TO SEXUAL ABUSE IN ORR SHELTER CARE FACILITIES.

The government does not dispute that (1) Congress directed HHS to promulgate regulations to prevent sexual abuse and harassment in ORR facilities, based on those applicable to prisons; and (2) the regulations are comprehensive and include remedies for noncompliance. Mot. 18-20. This framework, "specifically directed to the prevention of sexual abuse or harassment at ORR care provider facilities, is further evidence that the FHA does not apply here." Mot. 19. The government seeks to mischaracterize this argument as claiming an "exemption" from FHA liability, or repeal by implication. Opp. 18. But this is simply a matter of statutory construction: "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation omitted), including by empowering ORR to take action against noncompliant providers, Mot. 3-8. Thus, the

---

[9] While the government claims courts "rejected the contention that *Cox* bars FHA claims involving post-acquisition conduct," its cited decisions involved allegations of constructive eviction affecting housing availability, or erroneously applied the Title VII standard. Opp. 17 & n.18 (citing cases). *See supra* p. 8 n.8 (discussing Title VII standard).

9

FHA's provisions relating to sexual abuse and harassment in the "sale" or "rental" of "dwellings" do not apply to ORR facilities in the first place. Mot. 18-20.

Confirming the point, the FHA does not appear on ORR's list of the "Applicable Regulations and Program Policies" and "Pertinent Federal Laws and Regulations for the UC Program" in Southwest Key's agreements. *E.g.*, Dkt. 22-1 at 38-39, 42-43. This argument is not "absurd" (Opp. 19) because Southwest Key does not claim a categorical exemption from federal law. Rather, the FHA does not apply here because it would render ORR's congressionally mandated regulations superfluous. Mot. 19. The other statutes identified by the government (Opp. 19) do not: they relate to employees, claims for payment, and taxes, not the UC Program or ORR's regulations for preventing sexual abuse and misconduct. That ORR did not include the FHA in its agreements with Southwest Key merely confirms that the FHA does not apply to that program, consistent with the statutory interpretation and authorities discussed above and in Southwest Key's opening brief.[10] Although "the FHA and other regulatory schemes can coexist" (Opp. 19), the FHA cannot "coexist" where its terms do not apply.[11]

## CONCLUSION

Southwest Key agrees that children in its facilities should be free from *any* sexual misconduct. But the FHA simply does not apply to those facilities, and its application here would undermine ORR's efforts to carry out its statutory mandate. For the reasons above and in the opening brief, the Court should dismiss the Complaint.

---

[10] The government again invokes the boilerplate OMB form. Opp. 19 n.20. But the form does not state that the FHA applies to the UC Program, nor can it extend the FHA or other listed statutes like "Title IX of the Education Amendments of 1972," "Section 504 of the Rehabilitation Act of 1973," "the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970," to a program to which they do not already apply. Mot 8, 20; Dkt. 22-2. Nor does judicial estoppel apply, as Southwest Key's prior arguments were not judicially accepted. *See supra* pp. 4-6.

[11] All but one of the government's authorities (Opp. 19-20) were about preemption. The remaining case lacked overlap between comprehensive, congressionally required regulations and the FHA. *United States v. Kleinbank*, No. 17-cv-00136, at 12 (D. Minn. Jan. 20, 2018), https://perma.cc/8LAF-Z6E2.

Date:   November 20, 2024                            Respectfully submitted,

                                                     **WILLIAMS & CONNOLLY LLP**
By:   */s/ Christopher N. Manning*
       Christopher N. Manning

Lisa S. Blatt (*pro hac vice*)
Christopher N. Manning (D.C. Bar No. 464049)
Tomas P. Castella (Tex. Bar No. 24095813)
680 Maine Avenue SW
Washington, DC 20024
Tel.   (202) 434-5000
Fax    (202) 434-5029
Email  LBlatt@wc.com
       CManning@wc.com
       TCastella@wc.com

*Attorneys for Defendant Southwest Key Programs Inc.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 20th day of November 2024, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF filing system, which will send electronic notice of filing to all counsel of record.

/s/ *Christopher N. Manning*
Attorney for Defendant